2003 VT 59

### In re MacINTYRE FUELS, INC. and Vermont Agency of Transportation

[833 A.2d 829]

No. 02-272

¶ 1. June 30, 2003. MacIntyre Fuels, Inc., a Vermont corporation engaged in the business of transporting and selling petroleum products, appeals from the Environmental Board's assumption of Act 250 jurisdiction over the company's proposed project to construct an intermodal fuel transfer facility on a spur line adjacent to the main railway line in Montpelier. We conclude that the Board erred in determining that the project is subject to Act 250 jurisdiction under the 1994 rail siding amendment to 10 V.S.A. § 6001(3). We concur, however, with the Board's determination that MacIntyre's project requires an amendment to an existing permit for part of the land upon which the project is located. Accordingly,

the matter is remanded for further consideration consistent with this opinion.

¶ 2. In October 2001, MacIntyre obtained site plan approval from the City of Montpelier to construct a facility that would allow the transfer of petroleum products from railroad cars to trucks for local delivery. At the time, MacIntyre operated a network of similar facilities in Vermont and New Hampshire. The proposed project required the relocation of existing track, the laying of a spur line adjacent to the main track, and the installation of a system of fuel tanks, pipes, and pumping equipment. The project also called for the construction of a 30' x 36' canopy and the upgrading of an existing gravel driveway leading into the railroad yard. MacIntyre was to construct the project on land that it leased from the railroad. Most of that property, in turn, had been leased by the railroad from the State of Vermont. A small strip of land (40' x 100') on which the project was to be located, however, had been leased by the railroad from a neighboring property owner, Patrick Malone, under a reciprocal lease agreement. Apparently, that strip of land was needed to accommodate the canopy and a turnaround area. In its entirety, the project would physically alter approximately 58,000 square feet, or less than two acres of land.

¶ 3. In the fall of 2001, MacIntyre sought a declaratory ruling from the district 5 environmental coordinator that an Act 250 land-use permit was not needed for the project. State officials with the Agency of Transportation supported MacIntyre's position that the project was outside of Act 250 jurisdiction. That position was based on a 1994 amendment to 10 V.S.A. § 6001(3) that resulted from an earlier decision by another district coordinator requiring an Act 250 permit for a similar railroad project. The district coordinator in the earlier case determined that an Act 250 permit was needed because, although the project itself would physically alter only a few acres, the railroad line serving the proposed facility comprised more than ten acres. The ruling was based on § 6001(3), which defines "Development," in relevant part, as the "construction of improvements on a tract or tracts of land, owned or controlled by a person, involving more than 10 acres of land within a radius of five miles of any point on any involved land, for commercial or industrial purposes." In response to this ruling, the Railroad Association of Vermont took its case to the Legislature, which then amended § 6001(3) by adding the following sentences:

> In the case of a project undertaken by a railroad, no portion of a railroad line or railroad right-of-way that will not be physically altered as part of the project shall be included in computing the amount of land involved. In the case of a project undertaken by a person to construct a rail line or rail siding to connect to a railroad's line or right-of-way, only the land used for the rail line or rail siding that will be physically altered as part of the project shall be included in computing the amount of the land involved.

1993, No. 200 (Adj. Sess.), § 1 (currently codified at 10 V.S.A. § 6001(3)(C)(iv)).

¶ 4. Notwithstanding this amendment and the Agency of Transportation's support for MacIntyre's position, the district coordinator in the present case concluded in her November 9, 2001 jurisdictional opinion that MacIntyre was required to obtain an Act 250 permit. She found Act 250 jurisdiction by including as involved land the entire fourteen-mile-long railroad right of way running from Montpelier to Graniteville. In her view, the 1994 amendment did not apply because the project entailed more than just constructing a spur track. She further con-

cluded that, even if the railroad right of way was not considered as one contiguous property for jurisdictional purposes, the entire Malone property, approximately 100 acres, would have to be considered as involved land because a small part of the project was located on that property.

¶ 5. MacIntyre appealed the district coordinator's decision to the Environmental Board and submitted a statement of stipulated facts, which was joined by the Agencies of Transportation and Natural Resources. The Board held a hearing on April 17, 2002, but no oral argument took place because MacIntyre's position was unopposed. Instead, Board members directed questions to MacIntyre's attorney. On May 21, 2002, the Board issued its decision upholding the district coordinator's ruling that the proposed project required an Act 250 permit. The Board concluded that because MacIntyre was not a railroad, and because components of the proposed project were neither rail lines nor rail sidings, the land to be considered in determining Act 250 jurisdiction was all contiguous parcels — including the four-teen-mile railroad right of way and the entire Malone parcel — and not merely the two acres or so that was to be physically altered. On appeal to this Court, MacIntyre argues that (1) certain Board findings are clearly erroneous; (2) the Board erred in concluding that the 1994 amendment to § 6001(3) exempted only that portion of the proposed project involving the laying of track; and (3) with respect to both the railroad right of way and the Malone property, the Board should have considered only the land that was to be physically altered in determining whether an Act 250 permit was required.

¶ 6. Because we need not address Mac-Intyre's challenge to certain Board findings to resolve this appeal, we move directly to the central question in this case: Did the Board err in concluding that the

1994 amendment to § 6001(3) exempts from Act 250 review only the component of a proposed project involving the laying of track — and not the construction of attendant facilities — when the project is undertaken by someone other than a railroad? MacIntyre argues that the phrase "project undertaken by a person to construct a rail line or rail siding to connect to a railroad's line or right-of-way" should not and cannot be construed as exempting only the track component of proposed rail siding projects. To do so, it argues, would effectively negate the amendment because tracks are never built without attendant facilities, and would undermine the purpose of the legislation to put shippers transporting goods by rail on equal footing with shippers transporting goods by highway. In response, the State argues that the term "rail siding" has a narrow, technical meaning that refers only to the track itself and cannot be expanded to cover attendant facilities.

¶ 7. Although we generally defer to the Board's interpretation of Act 250 and its "special expertise in determining whether it has jurisdiction over a particular development," *In re Stokes Communications Corp.*, 164 Vt. 30, 35, 664 A.2d 712, 715 (1995), we do not abdicate our responsibility to examine a disputed statute independently and ultimately determine its meaning. When interpreting a statute, our fundamental objective is to discern and implement the intent of the Legislature. See *Green Mountain Power Corp. v. Sprint Communications*, 172 Vt. 416, 420, 779 A.2d 687, 691 (2001); *Perry v. Med. Practice Bd.*, 169 Vt. 399, 406, 737 A.2d 900, 905 (1999). If the statutory language is absolutely clear and unambiguous, we generally restrict ourselves to the plain meaning of that language, but if any question remains as to the intent underlying the statute, we also look at "the legislative history and circumstances surrounding its enactment, and the legislative policy it was designed

to implement." *Perry*, 169 Vt. at 406, 737 A.2d at 905. Indeed, if "the plain meaning of statutory language appears to undermine the purpose of the statute, we are not confined to a literal interpretation, but rather must look to the broad subject matter of the statute, its effects and consequences, and the purpose and spirit of the law to determine legislative intent." *Town of Killington v. State*, 172 Vt. 182, 189, 776 A.2d 395, 401 (2001); see *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 49, 527 A.2d 227, 228 (1986) ("the letter of a statute or its literal sense must yield where it conflicts with legislative purpose"); *State v. Baldwin*, 140 Vt. 501, 510-11, 438 A.2d 1135, 1140 (1981) (plain meaning rule is merely legal truism that may be disregarded to carry out legislative intent).

¶ 8. Here, the State has failed to demonstrate that the meaning of the term "rail siding," particularly in the context of this statutory provision, is so clear that we may not examine legislative history for insight as to its intended meaning. As noted, the 1994 amendment was enacted directly in response to the assumption of Act 250 jurisdiction over a project that was nearly identical to the one proposed here. In asserting Act 250 jurisdiction in this case, the Board relied upon the distinction in the 1994 amendment between projects undertaken by "a railroad" and those undertaken by "a person." 10 V.S.A. § 6001(3)(C)(iv). With respect to "a person," the statute exempts from Act 250 only those projects that "construct a rail line or rail siding to connect to a railroad's line or right-of-way." *Id.* This language creates a legitimate ambiguity as to whether the Legislature intended to exempt all aspects of rail siding *projects*, with emphasis on the word "project," or only the track component of such projects.

¶ 9. Our review of the committee hearings on the bill amending § 6001(3), H. 575, reveals that the second sentence of the amendment was intended to exempt all components of rail siding projects, including both the laying of track and the construction of attendant facilities. The bill started in the House Transportation Committee and then was transferred to the House Natural Resources and Energy Committee. At the initial Transportation Committee hearing on February 23, 1994, a railroad representative appeared and testified that the purpose of the proposed amendment was to put the railroads on equal footing with the trucking industry with respect to what type of projects required Act 250 permits. The representative explained that the recent ruling of the district coordinator including the railroad right of way as part of the involved land in a proposed fuel transfer project meant that any time anybody wanted to put a spur and facility adjacent to a rail line, that person would have to obtain an Act 250 permit, notwithstanding the scope of the project. The representative indicated that the proposed statutory language, which was identical to the language eventually enacted into law, had been drafted by an attorney representing the railroad industry.

¶ 10. At the initial hearing before the House Natural Resources and Energy Committee on March 10, 1994, an attorney for the Railroad Association of Vermont testified that the purpose of the second sentence of the proposed amendment was that

> if you've got somebody who proposes to ship or receive materials by rail, and wants to construct a facility to make that possible — a rail siding or a spur line, I guess, in common parlance — that only requires an Act 250 permit if the actual project is going to physically affect ten acres or more.... But what you don't do in that case is aggregate that potential shipper's entire parcel.

The attorney explained that a shipper proposing a project adjacent to the rail line should not have to obtain an Act 250 permit simply because inclusion of the railroad right of way pushes the project over the ten-acre limit. Doing so, according to the attorney, would have the effect of discouraging connections to rail and favoring the highway industry. The attorney emphasized that the second sentence concerned shippers who wanted to construct a spur line or siding so that they could be serviced by the railroad. In response to queries from committee members, Michael Zahner, the Environmental Board administrator at the time, testified that it was really a policy question as to whether the Legislature wanted to treat railroads and highways the same. He noted that there would be "land-based environmental impacts that are associated with the activity . . . occurring at the siding, whether it's a fuel depot or whatever." He emphasized that most of those concerns would be addressed through local zoning, but noted that Act 250 review is generally more comprehensive. As he saw it, the issue was whether the Legislature, as a matter of policy, was willing to forego that more comprehensive review in these circumstances.

¶ 11. At a follow-up hearing the next day before the same committee, the committee chair stated his understanding of the second sentence of the proposed amendment as follows:

> So if I need to buy some land to build a siding to connect to the rail line, that land is involved land. And any land that I'm developing for my warehouse or tank, farm, or furniture factory also would be involved land. But not the railroad right of way.

As the chair explained, under the second sentence of the proposed amendment, persons would not be encumbered by counting all of the land involved in the railroad right of way. Rather, "just the rail siting acreage and whatever acreage that's associated with their project" would be counted — the same as if the person was locating a business near a highway. At a later hearing held before the committee, the chair stated that the "crux" of the proposed amendment was that we would "not be calculating the main rail lines every time you have an adjacent project by the railroads or any of their customers."

¶ 12. The proposed statutory language presented to the committees remained exactly the same through enactment of the amendment into law. Apparently, however, the statements of the committee members and those that testified before the committee were not made part of a written report distributed to all of the members of the Legislature. Thus, they are certainly not conclusive as to what the disputed statutory language means. Nonetheless, the common understanding of those concerned at the committee hearings, including the Environmental Board administrator, suggests that the Legislature intended the second sentence of the amendment to exempt rail siding *projects* — including those components of the projects that go beyond the mere laying of track. Cf. *Bd. of County Comm'rs Clark County v. White*, 729 P.2d 1347, 1350 (Nev. 1986) ("When a statute is of doubtful import and subject to opposite meanings, limited resort may be had to testimony and committee discussions concerning the legislation in question."). Accordingly, we hold that the Board erred in including the fourteen-mile railroad right of way as part of the involved land in MacIntyre's proposed rail siding project.

¶ 13. One remaining problem, however, is that a small part of MacIntyre's project is on a private parcel leased by the railroad from Malone and subject to an Act 250 permit. MacIntyre invites this Court to adopt a rule whereby Act 250

jurisdiction would be triggered only if the proposed use in cases such as this violated any of the permit conditions on the private land, and then to review the conditions of the Malone Act 250 permit to determine whether the proposed project would violate any of those conditions. The State responds that MacIntyre has waived this argument by stating in its initial stipulation of facts that it intended to join the owner of the Malone property in applying for an amendment to the Malone permit.

¶ 14. We agree with the State, and therefore decline to address MacIntyre's arguments concerning the Malone property. The Board issued a prehearing conference report and order on February 28, 2002 establishing a schedule for the proceeding before it. Pursuant to that order, within the next month MacIntyre and the state agencies submitted a stipulation of facts in which they waived an evidentiary hearing. In so doing, they stated that the stipulation covered all relevant facts, and that no relevant fact was in dispute. Regarding the Malone property, the stipulation indicated that MacIntyre intended to join the owner of the property in applying for an amendment to the existing Act 250 permit that would allow the activities contemplated for the property under MacIntyre's proposed project. Later, beyond the deadline set forth in the Board's prehearing order, MacIntyre and the state agencies submitted a supplemental statement of stipulated facts and exhibits concerning the Malone property and its Act 250 permit. MacIntyre also proposed conclusions suggesting that no Act 250 permit was needed because none of the proposed activities on the Malone property violated any of the conditions of the Malone permit, but, at the same time, reiterated its intent to seek an amendment of the Malone permit.

¶ 15. In its May 21, 2002 decision, the Board declined to consider the supplemental stipulation of facts and exhibits because they were not authorized under the prehearing order, and because the parties waived the right to an evidentiary hearing based on the original stipulation of facts. Here, on appeal, MacIntyre has failed to demonstrate, or even argue, that the Board abused its discretion in refusing to consider the supplemental stipulation of facts and exhibits. Therefore, we agree with the State and the Board that MacIntyre has waived its right to challenge the Board's ruling with respect to the Malone property. For MacIntyre to proceed with its proposed project, it will first have to obtain an amendment to the Malone permit.

*The Environmental Board's May 21, 2002 order is reversed in part and affirmed in part, and the matter is remanded for further consideration consistent with this opinion.*

Motion for reconsideration denied August 11, 2003.