NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 3

No. 2017-189

| | |
|---|---|
| In re Petition of Stowe Cady Hill Solar, LLC | Supreme Court |
| | On Appeal from<br>Public Utility Commission |
| | October Term, 2017 |

James Volz, Chair

William J. Dodge and Joshua D. Leckey of Downs Rachlin Martin PLLC, Burlington, for
 Appellant.

Stephanie B. Hoffman, Department of Public Service, Montpelier, for Appellee.


PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1. **CARROLL, J.** Stowe Cady Hill Solar (Cady Hill) applied to the Public Utility Commission[1] for a certificate of public good to construct a group net-metered solar array in the Town of Stowe. The Commission dismissed Cady Hill's application after finding that the application was incomplete because two adjoining landowners were not given notice that the application had been filed contemporaneous with that filing. We hold that Cady Hill's application meets the completeness requirement as that requirement has been applied in the Commission's

---

[1] When the order on appeal was issued, the issuing agency was named the Vermont Public Service Board. The agency was renamed the Vermont Public Utility Commission effective July 1, 2017. 2017, No. 53, § 9. For the sake of simplicity, this opinion refers to the Public Service Board as the Commission throughout.

prior decisions and, therefore, the application should not have been dismissed.  We reverse and remand to the Commission for further proceedings in accord with this opinion.

¶ 2.     We begin with an overview of background information important to this appeal.  A net-metered system is an electricity producing system of up to 500 kW powered by a renewable energy source that operates alongside an existing electricity distribution network.  30 V.S.A. § 8002(16).  The energy produced by the net-metered system is fed into the existing distribution network and serves to offset the cost of the electricity used by the owner of the net-metered system.  A group net-metered system is a system in which multiple customers of a single electricity company combine their electric meters and use the electricity produced by the net-metered system to offset their group electric costs.  Id. § 8002(10).  Because a net-metered system connects with the existing electric grid, the Commission must grant a net-metered system a certificate of public good (CPG) before it may be constructed.  30 V.S.A. § 231(a) (stating Commission has authority to grant CPG); id. § 248(a)(2) (stating CPG is required before site preparation begins on electricity generating facility except for facilities designed for entirely onsite use).

¶ 3.     The Legislature overhauled the statutory framework governing CPG approval for net-metered systems in 2014, with an effective date of January 1, 2017.  2013, No. 99 (Adj. Sess.), § 2.  This legislative overhaul required the Commission to amend Public Utility Commission Rule 5.100, which implements the statutory CPG approval process and sets out the specific standards and procedures that apply to issuance of a CPG for a net-metered system.  Like the revised statutory framework under which it was promulgated, the new Commission Rule 5.100 became effective on January 1, 2017.

¶ 4.     The new rule includes two provisions that are especially relevant in this case.  First, under new Rule 5.100, a net-metered system between 150 and 500 kW must be located on a "preferred site" to obtain a CPG.  Construction and Operation of Net Metering Systems § 5.103, Code of Vt. Rules 30 000 5100, http://www.lexisnexis.com/hottopics/michie/ [hereinafter Rule

2

5.100]; Rule 5.100 § 5.104. The rule lists the specific kinds of locations that qualify as preferred sites, including brownfields, landfills, and sites previously used for mineral extraction and upon which all required reclamation activities are complete. Rule 5.100 § 5.103. The prior version of Rule 5.100 did not include a comparable siting limitation.

¶ 5. The new rule also provides that the Commission will review "pre-existing" net-metered system applications according to the version of Rule 5.100 in place at the time the application is filed. Rule 5.100 § 5.125(B). To qualify as a pre-existing application, the application must "have a complete CPG application filed with the Commission prior to January 1, 2017." Rule 5.100 § 5.125(A)(1); see also 2013, No. 99 (Adj. Sess.), § 10(f) ("30 V.S.A. § 219a and rules adopted under that section shall govern applications for net metering systems filed prior to January 1, 2017."). Thus, the Commission will review a CPG application for a new net-metered system under the prior version of Rule 5.100 if the application was filed before January 1, 2017, and the application is "complete" under the agency's own definition of that term. In turn, an application filed before the new rule became effective can qualify for a CPG if it meets the criteria of the old rule even if it would not qualify under the new rule.

¶ 6. The agency's definition of completeness is derived from the interplay of two separate Commission rules. The old version of Rule 5.110(C), which would apply to an application filed before the end of 2016, provides as follows:

> Upon receiving an application under this subsection, [Commission] staff will review the application for completeness. If the application does not substantially comply with the application requirements set forth herein, the Clerk of the [Commission] will inform the applicant of the deficiencies. Upon submission of all information necessary to address the deficiencies, the Clerk of the [Commission] shall notify the applicant that the filing is complete.

Regulations Pertaining to Construction and Operation of Net Metering Systems § 5.110(C), http://puc.vermont.gov/sites/psbnew/files/doc_library/5100-PUC-nm-adopted-2013_0.pdf [https://perma.cc/N5E3-HLUM] [hereinafter Prior Rule 5.100]. At the same time, Rule 2.208, which

3

remains unchanged from its 2016 iteration, reserves to the Commission the general authority to reject substantially defective or insufficient filings, stating that "[a] filing is substantially insufficient if, inter alia, it fails to include all material information required by statute or rule." Board Rules: Rules of Practice § 2.208, Code of Vt. Rules 30 000 2000, http://www.lexisnexis.com/hottopics/michie/.

¶ 7. This brings us to the facts of this case. Cady Hill sought a CPG for a 496 kW photovoltaic group net-metered system in the Town of Stowe and filed its application for the same on December 30, 2016—just two days prior to the new rule's effective date. The site of the proposed development is not one of the enumerated sites that qualify as preferred under new Rule 5.100, though the location is not a bar to a CPG under the prior version of the rule. For this reason, Cady Hill sought review under the old version of Rule 5.100 by means of the new rule's provision exempting pre-existing applications from the revisions to the rule.

¶ 8. The pre-2017 version of Rule 5.100 requires a developer to give adjoining landowners two kinds of notice that the developer is seeking a CPG for a net-metered system: advance notice and notice that an application has been filed. The developer must give advance notice to adjoining landowners, as well as municipal and regional entities and state agencies, that the developer intends to file a CPG application 45 days before filing the application. This advance notice must include "sufficient detail about the proposed project(s) to allow the parties receiving the notice to understand the impact of the project(s) on the interests of those parties." Prior Rule 5.100 § 5.110(C). A developer also must give adjoining landowners notice that the application has been filed at the time of the filing. Id.

¶ 9. On November 3, 2016, the project's then-developer, Cady Hill's predecessor, submitted advance notice of its intention to seek a CPG for the project to all of the entities required to receive such notice under the Commission's regulations, including adjoining landowners. All required recipients received this advance notice. Cady Hill's December application included

4

prefiled testimony, exhibits, site plans, a proposed order and findings of fact, certification that advance notice requirements were met, and a list of the names and addresses of all adjoining landowners. This list of names and addresses was correct and included each adjoining landowner. At the time of the December filing, Cady Hill also gave most adjoining landowners notice that it had filed an application for a CPG. Two adjoining landowners, who together owned a single adjoining property, were not given the required notice that Cady Hill had filed its application, though they were given the original notice of intent in November by Cady Hill's predecessor and were included on the list of adjoining landowners submitted with Cady Hill's December application.[2] All other necessary entities received the advance notice and notice of filing that the rule requires.

¶ 10. On January 4, 2017, one of the landowners who did not receive notice of the filing contacted the Commission to inquire whether Cady Hill's CPG application had been filed. The landowner also asked for a copy of the application. Cady Hill confirmed that the landowner had not received notice and, the same day, sent digital and hard copies of the notice to the landowners omitted at the time of the December filing. Cady Hill also sent a digital and hard copy of a letter summarizing the notice omission and corrective measures to the Commission. This letter asked the Commission to lengthen the comment period for these two specific landowners by four days to make up for the delayed service of notice.

¶ 11. On January 19, 2017, the Department of Public Service submitted comments on Cady Hill's application. The Department noted that Cady Hill had filed documents after January 1 acknowledging omissions in its application under the notice requirements of old Rule 5.100. The Department further noted that new Rule 5.100 promises CPG applicants review under the prior

---

[2] In its argument before this Court, Cady Hill emphasizes that these two landowners did not receive notice because of an inadvertent clerical error while preparing the notice service list. No party takes issue with this explanation, and we do not address the reason for the notice omission.

version of the rule if the applicant submits a "complete" application prior to the new rule's effective date. As explained above, under the old version of Rule 5.100, an application was deemed "complete" if it "substantially compl[ied] with the application requirements" of the rule. Accordingly, Cady Hill's application would fall within the purview of old Rule 5.100 if the application was in substantial compliance with the filing requirements of that version of the rule. The Department acknowledged "cures for these issues have historically been allowed by the [Commission] with an extension of the comment deadline as the remedy," but given that Cady Hill had acknowledged deficiencies in its initial filing, which were not cured until after January 1 and the new rule's effective date, the Department suggested the Commission make a completeness determination to decide which version of Rule 5.100 applied.

¶ 12. The day after the Department submitted its comments, several adjoining landowners—including the two that had not received notice of Cady Hill's filing—moved to intervene in the CPG application process. The landowners and the Town of Stowe separately filed motions to dismiss Cady Hill's application for a CPG, though neither sought dismissal based upon the notice defect in Cady Hill's application.

¶ 13. On April 6, 2017, the Commission issued a decision finding Cady Hill's application incomplete at the time of filing, pursuant to Rule 5.110(c), because two adjoining landowners had not received contemporaneous notice of the filing. The Commission explained that under Rule 2.208 an insufficient filing is not considered cured, and therefore complete, until the deficiency is remedied. In this case, Cady Hill's application was not cured of its initial defect until the adjoining landowners received notice that Cady Hill had filed its CPG application—on January 5, 2017. Because the effective completeness date of Cady Hill's application, as determined by the Commission, was after the effective date of new Rule 5.100, that rule governed Cady Hill's application. The Commission then dismissed Cady Hill's application without prejudice, stating

6

that Cady Hill could refile "using the procedures and forms prescribed by the revised net-metering regulations." This appeal followed.

¶ 14. The issue in this case is straightforward: whether Cady Hill's CPG application is governed by the old version of Rule 5.100 or the new rule as it became effective on January 1, 2017. Resolution of this question turns on whether Cady Hill's application was "complete" on the actual date of filing, or whether the application can only be considered "complete" on the date all adjoining landowners received notice that the application had been filed. Cady Hill raises multiple arguments in support of the conclusion that its application should have been deemed complete on December 30, 2016, the date of filing. As one of Cady Hill's arguments resolves this appeal, we address it alone.

¶ 15. But before we can reach the central issue in this case, we need to consider the standard under which we review questions such as the one presented here. In general, this Court affords decisions of the Commission deference—we "accord a strong presumption of validity to the [Commission's] orders." In re UPC Vt. Wind, LLC, 2009 VT 19, ¶ 2, 185 Vt. 296, 969 A.2d 144 (quotation omitted). In keeping with this heightened deference, we review the factual findings in an agency order for clear error. Petition of E. Ga. Cogeneration Ltd. P'ship, 158 Vt. 525, 531, 614 A.2d 799, 803 (1992). "The burden of demonstrating clear error is the appellant's, and that burden is not a light one." In re Vt. Elec. Power Co., Inc., 2006 VT 69, ¶ 6, 179 Vt. 370, 895 A.2d 226 (quotation omitted).

¶ 16. But this heightened deference is derived from, and closely tied to, the kind of administrative action reviewed—actions wherein an agency is relying on its particular expertise to make a determination that is legislatively entrusted to the agency. See, e.g., In re UPC Vt. Wind, LLC, 2009 VT 19, ¶ 2 (explaining when Commission considers CPG application "it is engaging in a legislative, policy-making process" and "must exercise its discretion to weigh alternatives presented to it, utilizing its particular expertise and judgment" (quotation omitted)). A prime

7

example is a Commission decision concerning the merits of a CPG application. The Legislature has delegated the authority to make these decisions to the Commission, and these decisions are within the special expertise of the Commission. See 30 V.S.A. § 231(a) ("If the Commission finds that the operation of [an entity over which it has jurisdiction] will promote the general good of the State, it shall give [the entity] a certificate of public good specifying the business and territory to be served by such petitioners."). The scope of our review of such actions is limited because of the nature of the actions themselves.

¶ 17. The heightened deference given this category of agency actions does not necessarily carry over when we review other kinds of action by an administrative agency. For example, we review an agency's procedural rulings for abuse of discretion. In re Waitsfield-Fayston Tel. Co., Inc., 2007 VT 55, ¶ 22, 182 Vt. 79, 928 A.2d 1219. In Waitsfield-Fayston we considered the Commission's application of Vermont Rule of Civil Procedure 15(b), which the agency had previously adopted for application in agency proceedings. We explained that the agency's procedural rulings do "not involve the [Commission's] special expertise" and because the abuse of discretion standard applies when we review a trial court's procedural ruling, the same standard is appropriate when we review an agency's decision on a procedural issue. Id. As in other contexts, we will find an abuse of discretion where an agency has declined to exercise its discretion or has done so on untenable or unreasonable grounds. Vt. Nat'l Bank v. Clark, 156 Vt. 143, 145, 588 A.2d 621, 622 (1991).

¶ 18. But the action on appeal does not fit into either of these categories; it is neither a merits decision nor a procedural ruling. Therefore, neither standard of review is precisely correct. First, the action on appeal here is not the kind of order that commands deference—it neither relies on the agency's special expertise nor is it within the purview of the agency's delegated authority. This is not a merits order wherein the Commission has considered the merits of a CPG application and the statutory and regulatory criteria, and subsequently made an informed decision regarding

8

whether to grant a CPG. That kind of order requires the heightened deference described above, but here the Commission never reached the merits of Cady Hill's application—the application was dismissed because the Commission determined that Cady Hill had failed to comply with a filing requirement.

¶ 19. On the other hand, despite the fact that Cady Hill's application was dismissed for failure to comply with Commission filing rules, this is also not a simple procedural ruling. The issue in this case turns on the Commission's interpretation of Cady Hill's application's completeness according to the agency's own rule—a substantive, rather than procedural question—and whether the application was complete upon its filing under the facts of this case. Unlike the generally applicable rule of civil procedure implicated in Waitsfield-Fayston, the rule here was promulgated by the agency and is specific to applications filed with the agency. See 30 V.S.A. § 2(c) ("The Public Utility Commission, with respect to any matter within its jurisdiction, may . . . initiate rule-making proceedings."). Just as importantly, the rule at issue here is dynamic: whether an application is complete depends on whether the application "substantially compl[ies] with the application requirements." Prior Rule 5.100 § 5.110(C). This determination is bordered by general parameters defined by the Commission, not, as would be the case for a general rule of civil procedure adopted by the judiciary, through judicial exercise. Thus, the regulation at issue here is more than a procedural rule and the abuse of discretion standard of review is as inappropriate for this purpose as would be the highly deferential standard we apply to the Commission's merits decisions.

¶ 20. It is well established that we defer to an agency's interpretation of a statute that the agency is tasked with interpreting, though we do not " 'abdicate our responsibility to examine a disputed statute independently and ultimately determine its meaning.' " In re Rutland Renewable Energy LLC, 2016 VT 50, ¶ 8, 202 Vt. 59, 147 A.3d 621 (quoting In re MacIntyre Fuels, Inc., 2003 VT 59, ¶ 7, 175 Vt. 613, 833 A.2d 829 (mem.)); see also Comm. to Save the Bishop's House,

Inc. v. Med. Ctr. Hosp. of Vt., Inc., 137 Vt. 142, 150-51, 400 A.2d 1015, 1019-20 (1979) ("It is a 'venerable principle that construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong.' " (quoting Red Lion Broad. Co. v. Fed. Commc'ns Comm'n, 395 U.S. 367, 381 (1969))). We will likewise defer to an agency's interpretation of its own regulation, as long as that interpretation is consistent with the statute that authorized promulgation of the regulation in question. In re Nehemiah Assocs., Inc., 168 Vt. 288, 292, 719 A.2d 34, 36 (1998); In re Wal-Mart Stores, Inc., 167 Vt. 75, 79-80, 702 A.2d 397, 400 (1997); see also Auer v. Robbins, 519 U.S. 452, 461 (1997) ("Because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation." (quotation omitted)). "Absent compelling indications of error, we will sustain [an agency's] interpretations on appeal." In re Wal-Mart Stores, Inc., 167 Vt. at 79, 702 A.2d at 400.

¶ 21. We will find error when a regulation is interpreted or applied in a way that exceeds the statutory mandate under which the regulation was promulgated. See In re Vitale, 151 Vt. 580, 583-84, 563 A.2d 613, 615-16 (1989) (explaining even though agency application of term undefined in statute or regulation "must be upheld on appeal, absent compelling indications of error" deference to agency interpretation "is not an invitation for an arbitrary expansion of" agency's authority and interpretation must agree with legislative intent of statute). We will also find error when a regulation is inconsistently applied. "A fundamental norm of administrative procedure requires an agency to treat like cases alike." Westar Energy, Inc. v. Fed. Energy Regulatory Comm., 473 F.3d 1239, 1241 (D.C. Cir. 2007); see also Norfolk S. R.R. Co., v. Shanklin, 529 U.S. 344, 356 (2000) (holding though "generally an agency's construction of its own regulations is entitled to substantial deference," agency construction that "contradicts the agency's own previous construction" is not due any deference (quotation omitted)).

¶ 22.    In this case, the Commission's application of its completeness rule runs counter to the Commission's own previous application of the same rule.  Furthermore, the Commission's decision in this case runs counter to the plain language of the legislative mandate in Act No. 99, the Legislature's revision of the net-metering statutory framework.  For these reasons, we accord no deference to the Commission in this instance and conclude that Cady Hill's application met the completeness requirement as that requirement has been previously applied by the Commission.

¶ 23.    Two Commission decisions in a single docket, Application of Seneca Mountain Wind, are particularly instructive regarding application of the completeness rule.  See Application of Seneca Mountain Wind, LLC (Seneca Mountain Wind I), No. 7867, 2012 WL 3637613 (Vt. Pub. Serv. Bd. Aug. 15, 2012); Application of Seneca Mountain Wind, LLC (Seneca Mountain Wind II), No. 7867, 2013 WL 4398965 (Vt. Pub. Serv. Bd. Aug. 9, 2013).  In these cases, Seneca Mountain Wind filed an application to install four temporary meteorological stations in the towns of Brighton, Ferdinand, and Newark.[3]  Seneca's initial application erroneously omitted the notice to adjoining landowners required by Commission rules.  When this error was corrected, the Commission determined Seneca's application complete.  Comments and requests for hearings were then accepted on the application for thirty days following the completeness determination. During this comment period, two adjoining landowners filed letters with the Commission asserting that they had not received notice of Seneca's application.  The Department of Public Service, the Town of Newark, and Seneca filed responsive comments.  The Town of Newark asked Seneca to demonstrate compliance with notice requirements and requested the Commission rule Seneca's

---

[3]  The relevant regulation in these cases explains that "[t]he applicant must provide written notice, at least 30 days in advance of filing a Section 246 application, to . . . the landowners of record property, pursuant to the current municipal grand list, adjoining the property on which the project will be located."  Seneca Mountain Wind I, 2012 WL 3637613, at *3.  Despite the differences in the timing of the notice required under the regulations applicable in the Seneca Mountain Wind decisions and the decision here, both sets of regulations predicate completeness on "substantial compliance" with application requirements, including the notice requirement.  See Seneca Mountain Wind II, at *34.

11

application incomplete if it was unable to do so. Seneca Mountain Wind I, 2012 WL 3637613, at *1-2.

¶ 24.    Seneca argued before the Commission that the landowners who had not received notice could not be considered adjoining landowners because, in each case, the property they owned adjoined a tract of land that would not house any project structures and, though owned by the same owners of record as the property on which Seneca's project was physically housed, was held under title separate from the title under which the project properties were held. Id. at *4. The Commission ruled that notice was nonetheless required. The properties were, as Seneca argued, owned under separate chains of title. But Seneca had leased the properties under a single leasing agreement, and the determination of whether a property could be considered adjoining depended not on the underlying ownership property interest, but on the project developer's interest in the property. Id. at *5. In other words, because Seneca's lease was effective for all the properties, the landowners adjoining each of the underlying properties were adjoining landowners of Seneca's leasehold, regardless of which particular underlying parcel would house the project's actual structures.

¶ 25.    In Seneca Mountain Wind II two adjoining landowners who should have received notice pursuant to the Commission's decision in Seneca Mountain Wind I—and that decision's clarification regarding which landowners should be considered adjoining landowners—did not in fact receive such notice. The Commission ruled as follows:

> With respect to adjoining landowners that should have received notice on August 23, 2012, but did not; our review of the record indicates that the owners of two parcels potentially fall into this category. As of August 23, 2012, Seneca had provided copies of its Application to seventy different entities or persons, each of whom was provided an opportunity to submit comments, request a hearing, and seek to intervene. Given these facts, it was appropriate for the Hearing Officer to find that Seneca had substantially complied with the application requirements . . . .

12

Seneca Mountain Wind II, 2013 WL 4398965, at *35. With respect to the notice requirement, Seneca Mountain Wind II turns on the relative proportion of those landowners who did not receive notice to the number that Seneca had correctly given notice. As the Commission concluded: "[A]n application is incomplete when the attendant landowner list improperly omits as many landowners as were omitted in Seneca's initial [a]pplication." Id. at *32.[4] This conclusion gives rise to no hard and fast rules but impliedly rests on the purpose of the notice requirement—"the pre-filing notice requirement is intended to provide parties an opportunity to work through potential areas of disagreement on an anticipated application before it is filed." Id. at *34.

¶ 26. The Seneca cases are particularly relevant because the Town of Newark revised its town plan while Seneca Mountain Wind's permits were pending, and under those revisions, the kind of development proposed by Seneca was expressly labeled as "inappropriate and inconsistent with the town's vision and goals." Id. at *36. On that basis, the Town argued in Seneca Mountain Wind II that Seneca's proposed development should be considered against the framework in the revised town plan, not the plan in effect when Seneca filed its application, which did not label the proposed kind of development as contrary to the town's vision or goals. Thus, Seneca Mountain Wind II squarely presented the Commission with an opportunity to consider the interaction of a completeness determination and a shifting regulatory backdrop—which could, as in this case, affect a project's viability. The Commission ruled that the original town plan applied because Seneca's application was complete before the plan revisions became effective, even though, as

---

[4] Neither Seneca Mountain Wind decision lists the total number of adjoining landowners or the number not given notice as part of Seneca's initial application. As written, the decision refers to the number of landowners on the list accompanying the developer's application, rather than the number of landowners given notice. But the reasoning of the Commission's decisions in the Seneca Mountain Wind cases is based upon those landowners given notice, rather than those on the list filed with the application. For the purposes of our decision here, this is a distinction without a difference.

13

explained above, some adjoining landowners had not received notice that Seneca filed its application on the date the Commission found the application complete. Id. at *37.

¶ 27. Consistent with the Commission's rulings in the Seneca cases, Cady Hill's application was complete when filed in that it substantially complied with the application requirements. Several factors collectively support this conclusion. First, the advance notice requirement was perfectly met—each landower required to receive advance notice did, in fact, receive such notice. Second, the list of adjoining landowners submitted to the Commission with Cady Hill's application was complete and accurate—each adjoining landowner was listed. Third, there is no dispute that Cady Hill provided contemporaneous notice of its filing to the owners of eight of the nine adjoining parcels. As in Seneca, on this record Cady Hill's failure to provide contemporaneous notice to two landowners who together owned a single adjoining parcel, when it otherwise fully complied with all other application requirements, does not undermine the conclusion that its application was substantially complete when filed. Therefore, Cady Hill's application should be considered complete as of the date of filing—December 30, 2016—and it should be considered according to the version of Rule 5.100 in effect at that time.[5]

_____

[5] Our recent decision, In re New Haven GLC Solar, LLC, 2017 VT 72, __ Vt. __, __ A.3d __, was discussed during oral argument before this Court. That case also presented the question whether an application could be considered complete when adjoining landowners were not given notice of the application. We summarized the procedural background and relevant argument there as follows:

Citing [the completeness rule], the Town argues that GLC's [CPG] application [for a 500 kW net-metered solar array] was defective and incomplete until October 20, 2015, more than one month after the Town filed its September 17 comments. The Town reasons as follows. In its July 13 application, in response to concerns raised by the Vermont Division for Historic Preservation, GLC filed a site plan that changed its road access as originally indicated in its 45-day advance notice from an improved and lengthened existing driveway adjacent to the Russell Farm to a longer driveway on a separately owned adjoining parcel just north of the Russell Farm. In its August 6 comments, the Town asserted that the 45-day advance notice period should be reopened because the adjoining parcel owner had

14

¶ 28.    The Department raises two main arguments in counterpoint to our decision here. First, it argues that the Commission's decision should be upheld because it was made in accord with the policy shift represented by the Legislature's adoption of Act No. 99.   Second, it argues a decision that Cady Hill's application was complete despite the notice omission would permit future applicants to file "placeholder" applications on the eve of a regulatory shift and thereby evade changes in state policy.   These arguments are not without merit, but in this case the Commission's

---

> not been identified and the new abutter had not been notified.  The Town repeated this assertion following GLC's filing of its September 8 revised site plan.   On October 2, the [Commission] directed GLC to respond to the Town's comments regarding a lack of notice to the new abutting property owner.   GLC responded that the property owner in question did not object to the project.   When, on October 15, the [Commission] asked GLC to supplement its response with a letter indicating that the property owner waived the right to comment in the proceeding, GLC complied with that request on October 20.   According to the Town, that is the date when GLC's application should be deemed complete, making its September 17 comments timely filed.

Id. ¶ 20.   We did not, however, resolve the case solely on the basis of the notice requirement. Instead we reasoned that the Commission should have accepted the Town's comments because they were filed within the timeframe given by regulation for a response to an amended filing, such as GLC's amended site plan.

> As indicated above, GLC submitted a revised project design on September 8, less than ten working days before the Town filed its September 17 comments.    Under the [Commission's] rules regarding general procedures . . . defective or insufficient filings are not cured until the date on which the defect is removed or the filing made complete . . . and responses to amended filings must be made within ten days of the filings.   In this case, the [Commission] should have considered the Town's September 17 comments because the Town filed the comments within ten days of the date the application was effectively complete.

Id. ¶ 21.   Thus, our decision in New Haven GLC Solar concluded that GLC's CPG application was complete on the date that GLC's final amended site plan was filed, regardless of the fact that GLC had not yet given notice of the application to an adjoining property owner identified under that amended site plan.   For this reason, we find our decision in New Haven GLC Solar instructive here, though because the underlying facts in that case are not precisely the same as the facts presented in this appeal, we do not rely on New Haven GLC Solar directly.

15

action ran counter not just to its own precedent, but also to the legislative mandate in Act No. 99 directing the Commission to review "pre-existing" applications under the version of Rule 5.100 in effect at the time of filing. See 2013, No. 99 (Adj. Sess.), § 10(f) ("30 V.S.A. § 219a and rules adopted under that section shall govern applications for net metering systems filed prior to January 1, 2017."). Despite the clear shift in policy represented by the Legislature's adoption of Act No. 99, the Legislature kept space for the approval of applications filed under the pre-2017 regulatory regime. The Legislature expressly directed the Commission to review these applications pursuant to earlier versions of Rule 5.100, including the pre-2017 completeness test. Under the guise of meeting the new legislative policy represented by Act No. 99, the Commission did not follow this direction when it did not consider Cady Hill's application under the applicable completeness rule in Prior Rule 5.100.

¶ 29. Regarding the Department's second argument, we note that our decision here is limited. We hold only that the Commission should have consistently applied its own completeness rule regarding notice requirements under the prior version of Rule 5.100. Our understanding of the completeness rule, and its application, does not extend to other elements of a CPG application to the Commission, nor does it pretend to define those elements considered "material" to an application. We need not resolve those questions in this case, and therefore do not reach them.

Reversed and remanded for further proceedings in accordance with this opinion.

FOR THE COURT:

_____
Associate Justice

16