NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 34

No. 2020-092

| | |
|---|---|
| In re Champlain Parkway SW Discharge Permit (Fortieth Burlington, LLC, Appellant) | Supreme Court |
| | On Appeal from Superior Court, Environmental Division |
| | October Term, 2020 |

Thomas S. Durkin, J.

Judith L. Dillon of Lisman Leckerling, P.C., Burlington, for Appellant.

Thomas J. Donovan, Jr., Attorney General, and Robert F. McDougall, Assistant Attorney General, Montpelier, for Appellee Vermont Agency of Natural Resources.

Jonathan T. Rose and Malachi T. Brennan of Dunkiel Saunders Elliott Raubvogel & Hand, PLLC, Burlington, for Appellee City of Burlington.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **COHEN, J.** The City of Burlington and the Vermont Agency of Transportation (VTrans) are jointly in the process of constructing the Champlain Parkway, a roadway project intended to connect Interstate 189 to downtown Burlington and make numerous improvements to the surrounding area. Fortieth Burlington, LLC (Fortieth) owns property adjacent to the project and has challenged the decision of the Vermont Agency of Natural Resources (ANR) to grant the project a renewed stormwater discharge permit. Fortieth argued before ANR and the Environmental Division that the agency unlawfully waived a filing deadline in its 2017 stormwater regulations and misinterpreted a provision of its 2017 Stormwater Management Manual. We

affirm the Environmental Division's grant of summary judgment for the City and VTrans on these claims.

## I. Background

¶ 2. First, some background. In 10 V.S.A. § 1264, the Legislature directed ANR to implement a stormwater permitting program and adopt rules to manage stormwater runoff throughout the state. See id. § 1264(a)(2)(B), (f). On October 11, 2012, ANR granted the City a stormwater discharge permit for the Champlain Parkway project. The permit expired five years after the date of issue and provided: "The permittee shall reapply for a renewed discharge permit ninety days prior to the expiration date of this permit." The City's permit was thus set to expire on October 11, 2017.

¶ 3. Effective July 1, 2017, ANR promulgated a set of regulations to manage stormwater discharge in the state. Environmental Protection Rules, Chapter 22, Stormwater Management Rule for Stormwater-Impaired Waters [hereinafter 2017 Regulations], https://dec.vermont.gov/ sites/dec/files/documents/StormwaterManagementRule_ForStormwaterImpairedWaters_Ch22_F inalAdopted_2016-12-15.pdf [https://perma.cc/3QJC-AWYF]. One of the 2017 regulations provided: "A permittee who wishes to continue to discharge after the expiration date of . . . her individual permit shall file an application for reissuance of the individual permit, on a form provided by [ANR], at least 90 days prior to its expiration." Id. § 22-309(k)(1).[1]

¶ 4. Also effective July 1, 2017, ANR adopted the 2017 Stormwater Management Manual (VSMM). 2017 Vermont Stormwater Management Manual Rule and Design Guidance, § 1.4 [hereinafter 2017 VSMM], https://dec.vermont.gov/sites/dec/files/wsm/stormwater/docs/ Permitinformation/2017%20VSMM_Rule_and_Design_Guidance_04172017.pdf [https://perma

---

[1] We refer to the ninety-day provisions in the permit and the 2017 regulations collectively as "the filing deadline" or simply, "the deadline." The agency has since adopted a new set of regulations and rescinded the ninety-day provision. Environmental Protection Rules, Chapter 22, Stormwater Permitting Rule, https://dec.vermont.gov/sites/dec/files/wsm/stormwater/docs/ 2019_02_15%3B%20Final%20Adopted%20Chapter%2022%2C%20Stormwater%20Permitting %20Rule.pdf [https://perma.cc/BYE4-29XR].

.cc/NGV5-LC6S]. The 2017 VSMM updates the stormwater management practices and site design approaches of its predecessor, the 2002 VSMM. See id. § 1.0. As relevant here, the transition clause of the 2017 VSMM provides that "the standards in the 2002 VSMM shall apply to a project if the redevelopment or expansion is a public transportation project, and as of January 1, 2017, the Agency of Transportation or the municipality principally responsible for the project has initiated right-of-way valuation activities." Id. § 1.4.

¶ 5.     It is uncontested that the City filed an application to renew the permit on September 15, 2017—after the filing deadline, but twenty-six days before the permit was set to expire. ANR accepted the City's filing as timely and placed a proposed, renewed permit up for public comment, essentially waiving the deadline.

¶ 6.     Fortieth filed comments challenging the proposed permit, among other reasons, because the City did not comply with the filing deadline and because the renewal application did not indicate compliance with the 2017 VSMM. ANR rejected the deadline challenge, concluding that the application was timely because it was filed before the permit expired. The agency also rejected the VSMM challenge, pointing to the 2017 VSMM transition clause. It thus issued the project a renewed permit and indicated that the project complied with the 2017 regulations and the 2002 VSMM.

¶ 7.     Fortieth appealed to the Environmental Division, arguing that the filing deadline had to be enforced as written and that the project did not qualify for the transition clause of the 2017 VSMM because right-of-way valuation activities were not initiated until after January 1, 2017. The City and ANR moved for partial summary judgment on the deadline issue. They argued that the filing deadline was waivable as a mere procedural rule designed to benefit ANR and that the waiver did not prejudice Fortieth in any respect. The movants submitted evidence that it was ANR's consistent practice to accept renewal applications filed after the filing deadline if they were submitted before the permit expired. The Environmental Division agreed that the deadline was an

internal procedural rule, deviation from which resulted in no prejudice. The court therefore granted partial summary judgment on this issue.

¶ 8. Separately, the City moved for partial summary judgment on the VSMM issue and marshalled evidence that right-of-way valuation activities were initiated as far back as the 1980s, when the first steps were taken to secure a right-of-way for the project, and more recently in 2016, when property valuation activities were undertaken for a new section of the roadway. The Environmental Division granted partial summary judgment for the City on this issue as well.

¶ 9. We review the Environmental Division's grant of summary judgment without deference, and we apply the same standard as that court. In re Mathez Act 250 LU Permit, 2018 VT 55, ¶ 5, 207 Vt. 537, 192 A.3d 400. Summary judgment is appropriate "when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.

II. ANR's Waiver of the Filing Deadline

¶ 10. On appeal, Fortieth first argues that the plain language of the permit and the 2017 regulations must be enforced without deferring to the agency's interpretation. It argues that the permit and regulations do not confer discretion on ANR to waive the filing deadline it adopted. Fortieth further contends that the deadline is not an internal procedural rule that ANR can disregard and that it was prejudiced by the agency's waiver of the deadline.

¶ 11. As a preliminary matter, there is no agency interpretation to defer to in this deadline issue. While we defer to an agency's interpretation of its own regulations, see, e.g., In re Joyce, 2018 VT 90, ¶ 18, 208 Vt. 226, 197 A.3d 378, ANR did not interpret the 2017 regulations or the permit differently than their plain meanings dictate. The regulations and the permit are unambiguous: A permittee must file for renewal ninety days prior to the expiration date of the permit. See supra, ¶¶ 2-3. ANR did not interpret these provisions otherwise; it waived the deadline altogether. Moreover, this is not a case where a substantive issue requiring agency interpretation is woven into a procedural matter, as in In re Stowe Cady Hill Solar, LLC, where an agency rule required the agency to determine whether certain applications "substantially" complied with

4

prescribed requirements. 2018 VT 3, ¶ 19, 206 Vt. 430, 182 A.3d 53. ANR's action here of waiving a filing deadline in its own regulations is the type of procedural ruling we review for abuse of discretion, which exists "where an agency has declined to exercise its discretion or has done so on untenable or unreasonable grounds." Id. ¶ 17.

¶ 12. We accordingly consider whether ANR abused its discretion in waiving the filing deadline it established. Generally, administrative agencies must follow their own regulations until they rescind or amend them. This settled principle is reflected in our state law, federal law, and the law of other states. See, e.g., Columbia Broad. Sys., Inc. v. United States, 316 U.S. 407, 422 (1942); Jordan Towing, Inc. v. Hebbville Auto Repair, Inc., 800 A.2d 768, 777 (Md. 2002); N.Y. Times Co. v. Comm'r of Revenue, 693 N.E.2d 682, 685 (Mass. 1998); In re Peel Gallery of Fine Arts, 149 Vt. 348, 351, 543 A.2d 695, 697 (1988). But, as ever, there are exceptions to the rule.

¶ 13. The U.S. Supreme Court adopted one such exception in American Farm Lines v. Black Ball Freight Services, 397 U.S. 532 (1970). There, federal statutes granted the Interstate Commerce Commission (ICC) the power to grant motor carriers expedited, temporary operating authority to meet urgent transportation needs. Further to that power, the ICC promulgated rules requiring applications for temporary authority to include statements with specified information designed to establish the need for the temporary authority. American Farm Lines filed an application with statements generally describing the need for the authority but omitting some of the specified information required by the ICC rule. The ICC nevertheless granted the application, an action other carriers challenged as an unlawful failure of the ICC to require strict compliance with its own rules.

¶ 14. The Court observed that the agency was "entitled to a measure of discretion in administering its own procedural rules." Id. at 538. It then held that an agency may waive a procedural rule "adopted for the orderly transaction of business" to aid the agency in exercising its discretion and "not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion." Id. at 538-39. Such a waiver may be lawful if the

5

agency does not fail to exercise discretion mandated by rule, and no "substantial prejudice" befalls a complaining party. Id. at 539. The Court there considered that the failure to supply the required information did not prejudice the protesting carriers in voicing their objections to the application. Id.

¶ 15. The federal courts of appeal have since applied American Farm Lines to uphold agency waivers of administrative deadlines such as the one at issue here. For example, the Court of Appeals for the D.C. Circuit upheld the ICC's acceptance of a late petition for a stay of an order where the deadline was "designed not primarily to safeguard private rights but rather to facilitate the Commission's orderly transaction of its business" and there was no substantial prejudice to complaining parties. Dana Corp. v. ICC, 703 F.2d 1297, 1300 (D.C. Cir. 1983); see also Health Sys. Agency of Okla., Inc. v. Norman, 589 F.2d 486, 489-90 (10th Cir. 1978) (holding that agency had discretion to waive filing deadline administratively chosen to ensure that applications were received with time to review and make necessary determination).

¶ 16. State high courts have embraced the American Farm Lines exception as their own. See, e.g., Forquer v. State, Commercial Fisheries Entry Comm'n, 677 P.2d 1236, 1243-44 (Alaska 1984); Pollock v. Patuxent Inst. Bd. of Review, 823 A.2d 626, 650 (Md. 2003); W. Bloomfield Hosp. v. Certificate of Need Bd., 550 N.W.2d 223, 227 (Mich. 1996). We join these courts in adopting American Farm Lines as a sound principle of state administrative law. Failure to do so would force agencies to adhere inflexibly to all their procedural rules, producing irrational consequences in many cases and resulting injustice. Or, it would deter agencies from adopting numerous procedural rules that facilitate their work, creating unnecessary administrative inefficiency.

¶ 17. But the exception is strictly circumscribed by American Farm Lines itself and our established principles governing agency application of regulations. To invoke the exception, the agency action must first and foremost be consistent with governing statutes. See, e.g., Stowe Cady Hill Solar, 2018 VT 3, ¶ 21 (observing that agency regulations cannot be "applied in a way that

6

exceeds the statutory mandate under which the regulation was promulgated"); Martin v. State, Agency of Transp. Dep't of Motor Vehicles, 2003 VT 14, ¶ 28, 175 Vt. 80, 819 A.2d 742 ("Agencies generally may not choose to ignore their statutory mandate because they believe it is administratively inefficient or infeasible." (quotation omitted)). Second, the rule at issue must be a procedural rule adopted for the orderly transaction of business to aid the agency in exercising its discretion, not one intended to confer important procedural benefits upon individuals. Am. Farm Lines, 397 U.S. at 538-39. Third, the agency action must not substantially prejudice a complaining party. Id. at 539. Fourth, the agency action cannot constitute a failure to exercise independent discretion mandated by regulation. Id.; see also Bennington Hous. Auth. v. Bush, 2007 VT 60, ¶¶ 13-14, 182 Vt. 133, 933 A.2d 207 (holding that agency abused its discretion in evicting entire family following lease violation of one member when regulations granted agency more flexible discretion in addressing such violations). Finally, the agency must apply the rule consistently, not arbitrarily, unreasonably, or discriminatorily. Stowe Cady Hill Solar, 2018 VT 3, ¶ 21 ("A fundamental norm of administrative procedure requires an agency to treat like cases alike." (quotation omitted)); see also In re Apple Hill Solar LLC, 2019 VT 64, ¶ 25, 211 Vt. 54, 219 A.3d 1295 (noting that agency departure from prior holdings "cannot rest on bases that are arbitrary, unreasonable, or discriminatory").

¶ 18.   ANR complied with the above requirements in waiving the filing deadline and consequently did not abuse its discretion. To begin, the agency action is consistent with the governing statute. Among other things, the stormwater management statute directs ANR to implement a stormwater permitting program, grants the agency the power to adopt rules to manage the program, outlines land uses requiring a discharge permit, and specifies that a permit is valid for a period "not to exceed five years." See 10 V.S.A. § 1264(a)(2)(B), (c), (f), (h)(1). Although the statute establishes certain substantive requirements for permit renewal, see, e.g., id. § 1264(h)(2)(A)(ii), it does not specify the process for renewal or mandate the ninety-day filing deadline.

7

¶ 19. For interrelated reasons, the filing deadline was a procedural rule adopted for the orderly transaction of business to aid the agency in exercising its discretion; it was not intended to confer important procedural benefits upon individuals; and the waiver did not result in prejudice. The rule did not regulate the agency's determination of whether the project complied with substantive requirements to renew a permit. It did not even govern the information required in renewal applications. The permittee and the public would have been in the same position if the renewal application had been filed ninety-one days before expiration as they were when it was filed twenty-six days before expiration. ANR's substantive review of the permit was no different in the second instance than in the first.

¶ 20. Nor was the deadline adopted to allow other parties sufficient time to oppose or otherwise influence the renewal. Like the protesting carriers in American Farm Lines, Fortieth had an unhindered opportunity to voice its concerns or opposition to the renewal. See 397 U.S. at 538. ANR's regulations required the agency to determine when a renewal application was complete and then submit the application and a draft, renewed permit to at least thirty days of public comment or an extended public-comment period. See 2017 Regulations, supra, § 22-309(k)(1) ("A renewal application shall be noticed subject to the public participation requirements set forth in subsection 309(d) of this section."); id. § 22-309(d) (establishing thirty-day comment period with possibility of extension and public hearing). Once ANR accomplished these tasks, the public had at least thirty days to comment, regardless of when the application was filed. Fortieth fully availed itself of that process.

¶ 21. Fortieth argues that the waiver resulted in prejudice because the City was allowed to renew the permit under an older set of stormwater regulations than those in effect at the time of renewal. It maintains that if the City had been forced to apply for an entirely new permit, the new regulations would have applied. We disagree. First, though ANR reviewed the permit under the 2002 VSMM, it did apply the 2017 regulations. Thus, the project was not allowed to circumvent all existing regulations at the time of renewal. Second, the fact that the permit was subjected to

8

the 2002 VSMM instead of the 2017 VSMM is a function of ANR's regulatory choice to adopt the transition clause and its determination that the project satisfied the clause. The 2002 VSMM would have applied whether ANR processed the City's application as a renewal or as a new application, and thus irrespective of ANR's waiver of the deadline to renew. No prejudice stemmed from renewal or the deadline waiver.

¶ 22. Finally, because the agency action here did not constitute a failure to exercise independent discretion mandated by regulation, what remains is to determine whether the agency applied the rule inconsistently. Before the Environmental Division, the City and ANR submitted an affidavit from the program manager of ANR's stormwater program, who had applied the agency's stormwater regulations and issued permits since 2007. According to the manager, ANR processed permit renewal applications received beyond the filing deadline, considered a renewal application to be timely if it was filed before the permit expired, and in his experience, ANR had never denied a renewal application for failure to comply with the filing deadline. A former ANR stormwater district manager from 2010 to 2016 echoed these statements in a separate affidavit. Fortieth disputed these statements but did not adduce any evidence to contradict them. Although we consider the summary judgment record in the light most favorable to the nonmoving party, that party may not "rest on bare allegations to demonstrate that disputed material facts remain." Baptie v. Bruno, 2013 VT 117, ¶ 10, 195 Vt. 308, 88 A.3d 1212 (quotation omitted). Given the unchallenged record evidence that the agency has applied the rule consistently, we consider the fact undisputed. See V.R.C.P. 56(c)(1)(A), (e)(2). There is no genuine dispute as to any material fact, and the City and ANR are entitled to judgment as a matter of law on the deadline issue.

¶ 23. We do not easily deviate from the principle that "[a]n administrative agency must abide by its regulations as written until it rescinds or amends them." Peel Gallery, 149 Vt. at 351, 543 A.2d at 697. This was and remains the law. But, when an agency scrupulously satisfies the elements we have here outlined, fairness demands the exception as much as the rule.

9

### III. Transition Clause of the 2017 VSMM

¶ 24.    The second issue on appeal is whether ANR erred in concluding that the project qualifies for the transition clause of the 2017 VSMM, which allows the project to implement the standards of the 2002 VSMM.  Fortieth contends that the project does not qualify because right-of-way valuation activities were not initiated until after January 1, 2017.  Specifically, it argues that these activities were not begun by that date because certain right-of-way plans mandated by the 2012 Vermont Agency of Transportation's Right-of-Way Manual (VTrans Manual) were not completed until April 2018 and a necessity hearing required under 19 V.S.A. § 502 did not occur until May 2018.

¶ 25.    In determining that the project satisfied the transition clause, ANR interpreted its own rules, employing its expertise in a regulatory area statutorily entrusted to it.  See 10 V.S.A. § 1264.  We therefore accord substantial deference to the agency's interpretation of the VSMM. In re ANR Permits in Lowell Mountain Wind Project, 2014 VT 50, ¶¶ 15, 17, 196 Vt. 467, 98 A.3d 16 (extending substantial deference to ANR interpretation of VSMM because "[i]nterpretation of the VSMM is squarely within ANR's expertise as its authoring agency").  We nevertheless undertake an independent review and "will overturn an agency's interpretation of its own promulgated regulation that exceeds the authority granted under the state enabling statute; that conflicts with past agency interpretations of the same rule; that results in unjust, unreasonable or absurd consequences; or that demonstrates compelling indications of error."  In re Conservation Law Found., 2018 VT 42, ¶ 16, 207 Vt. 309, 188 A.3d 667 (quotations omitted) (citations omitted). There is no such showing here.

¶ 26.    This Court construes administrative rules "to discern the intent of the drafters, and we so do by examining the plain meaning of the regulatory language."  Id. ¶ 15; see also In re Vitale, 151 Vt. 580, 584, 563 A.2d 613, 616 (1989) ("The primary rule when reviewing construction of an administrative rule is to give language its plain, ordinary meaning.").  Under the relevant portion of the transition clause, the standards in the 2002 VSMM apply to this

concededly public transportation project if "as of January 1, 2017, the Agency of Transportation or the municipality principally responsible for the project has initiated right-of-way valuation activities." 2017 VSMM, supra, § 1.4 (emphasis added). To "initiate" means "to cause or facilitate the beginning of" something. Initiate, Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/initiate [https://perma.cc/4G63-CZKY]. "Valuation" means "[t]he process of determining the value of a thing or entity," Valuation, Black's Law Dictionary (11th ed. 2019), or more specifically, "appraisal of property," Valuation, Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/valuation [https://perma.cc/9R7X-J8EJ]. Plainly, the drafters intended the transition clause to apply to projects for which the process of appraising the land necessary to build the project had begun as of January 1, 2017.

¶ 27. The plain language of the transition clause is inconsistent with Fortieth's suggestion that the clause is tied to the timing of the necessity hearing required under 19 V.S.A. § 502(c) to acquire property to construct a highway. The clause does not reference this statute or provide other evidence of the reference Fortieth suggests. Nor does the language of the transition clause support Fortieth's argument that the clause references the 2012 VTrans Manual. If the drafters of the transition clause had intended to make the clause turn on 19 V.S.A. § 502 or the VTrans Manual, they would have referenced the statute or the manual.[2]

¶ 28. Finally, there is evidence in this record that right-of-way valuation activities had been initiated as of January 1, 2017. Before the Environmental Division, the City filed two affidavits indicating that right-of-way valuation activities were undertaken in the 1980s and in

_____

[2] We do not interpret the statute or the manual here. But we do note that the statute and the part of the manual Fortieth identifies refer to acquisition of property, not property valuation activities. See 19 V.S.A. § 502(c)(1) ("A public hearing shall be held . . . prior to the Agency's initiating proceedings under this chapter for the acquisition of any property."); Vermont Agency of Transportation 2012 Right of Way Manual, 2-5, https://vtrans.vermont.gov/sites/aot/files/highway/documents/rightofway/RightofWayManual2012.pdf [https://perma.cc/YDB29LZJ] ("Right of way plans are prepared . . . to provide the title and technical data necessary when acquiring land and/or rights for the construction of transportation projects."). We see nothing in the statute or cited portion of the manual prohibiting or discouraging the initiation of property valuation activities until the public hearing or right-of-way plans are finalized.

2016. The City's assistant director of public works, responsible for overseeing development of the project, attested that valuation to build a southern portion of the roadway began in the 1980s. The director also stated that in 2016, VTrans undertook valuation activities for a northern portion of the project. VTrans' acquisition chief, who has worked on the project since the 1980s, provided the same information. Fortieth did not produce any evidence contesting these statements and therefore failed to create a genuine dispute of fact. See Baptie, 2013 VT 117, ¶ 10; V.R.C.P. 56(c)(1)(A), (e)(2). The agency's interpretation of the transition clause is consistent with its plain language and was reasonably applied to the facts before us. We find no inconsistency with the governing statute or previous agency interpretations, no unjust, unreasonable, or absurd consequences, and no compelling indications of error. The City is entitled to judgment as a matter of law on this issue.

Affirmed.

FOR THE COURT:

_____
Associate Justice