REIBER, C.J.
¶ 1. The Town of New Haven appeals the Public Service Board's issuance of a certificate of public good (CPG) to New Haven GLC Solar, LLC (GLC) to construct a net-metered solar array within the Town. The Town asserts that the Board acted arbitrarily and in excess of its lawful authority by issuing the CPG without holding a hearing on significant issues raised by the Town, without giving due consideration to the Town's recommendations or the town plan, and without following its own mandatory regulations regarding interconnection procedures. We reverse the Board's issuance of the CPG and remand the matter for the Board to consider the Town's comments that it deemed to be untimely filed and to hold a technical hearing, at minimum, on the interconnection issue discussed below.
¶ 2. We first provide some helpful background information before examining the procedural history of this particular case. A net-metering system is an electric generator that is powered by renewable (e.g., solar, wind, water) energy and is interconnected with the local utility electric distribution network. The primary purpose of a net-metering facility is to offset the electric usage of a utility customer by either turning the customer's electric meter backwards for each kilowatt hour of electric energy produced or giving utility bill credits that are calculated by multiplying the customer's electric retail rate by the kilowatt hour of energy the net-metering facility produces. Because these systems are electric generators that interconnect with the local electric utility, they are subject to the Board's jurisdiction under 30 V.S.A. § 248 with respect to the issuing of CPGs.
¶ 3. In 1998, the Legislature first authorized the Board to implement a net-metering program "by rule or order standards and procedures governing application for, and issuance or revocation of a certificate of public good" pursuant to the provisions of § 248. 1997, No. 136(Adj. Sess.), § 2(c).[1] Act 136 authorized the *1213 Board to waive the requirements of § 248 that are inapplicable to net-metering systems and to "modify notice and hearing requirements" of § 248 as the Board "deems appropriate." Id. § 2(c)(1)-(2). In addition, Act 136 required the Board to "seek to simplify the application and review process as appropriate." Id. § 2(c)(3). The Board adopted the standards and procedures required by Act 136 by order dated April 21, 1999, and codified them by adopting Board Rule 5.100 in 2001.
¶ 4. In 2011, the Legislature increased the maximum capacity of net-metering systems from 250kW to 500kW. 2011, No. 47, § 1. In response, the Board modified the review and approval procedures for these larger net-metering systems by amending Rule 5.100, effective January 27, 2014. It is that version of Rule 5.100 that governs GLC's application in this case. Board Rule 5.110(C) established a 45-day advance notice requirement for net-metering projects, similar to the notice requirement required by § 248(f), and a 21-day comment period on net-metering applications.
¶ 5. In this case, on May 29, 2015, GLC sent parties entitled to notice under Board Rule 5.110(C) 45-day advance notice of its intent to file a CPG application to install a 500kW net-metered solar array at a specified address on Vermont Route 7 within the Town of New Haven on property locally known as the Russell Farm. On July 10, the Town submitted a response asserting, among other things, that the proposed project would interfere with the orderly development of the region, would be inconsistent with the land conservation measures within the town plan, would result in a negative economic impact and negative net social benefits for the town, and would have a negative impact on soil and water. The Town also argued that the proposed project did not comprise a net-metering system under Board rules and thus could not be considered under net-metering systems procedures.
¶ 6. On July 13, GLC filed with the Board an application seeking a CPG for the project pursuant to 30 V.S.A. §§ 219a and 248. On July 18, the Town filed a notice of appearance and statutory party status.[2] On July 20, GLC filed supplemental materials consisting of a revised site plan and supporting testimony. On August 3, the Department of Public Service filed a comment on the application stating that its review of the proposed project did not reveal any significant issues with the substantive criteria of § 248 upon which it typically made recommendations, including orderly development of the region, system stability and reliability, and aesthetics. The Department noted, however, that the project's access road, as indicated in the 45-day notice, had been relocated in the application to another property immediately north of the Russell Farm, presumably to avoid adversely impacting the historical significance of the Russell Farm complex, which was listed in the state register of historic places. The Department recommended that GLC confirm on the record that the relocation of the access road *1214 would not significantly impact the applicable § 248 criteria. The Department also recommended that GLC confirm that the project would not be visible from nearby residences and that the CPG be conditioned on GLC filing a copy of a Fast Track Interconnection Analysis (FTA) completed by the local utility, Green Mountain Power (GMP), demonstrating GMP's agreement that a system impact study was not necessary and that the project would not adversely affect system stability and reliability.[3]
¶ 7. On August 6, the Town filed comments in which it incorporated by reference its earlier comments, acknowledged that notice to adjoining landowners had been adequate, and stated that GLC's application should include an analysis of any visual or noise impacts of the project on nearby residences and should list changes to the project from the 45-day advance notice, including relocating the access driveway. The Town also indicated that it was reserving its right to comment further and present evidence on any changed components of the project after town staff had sufficient time to review them. On August 10, the Town filed a response to the Department's comments, and requested a technical hearing. The Town asserted that GLC's new proposal to construct a twelve-foot wide, 1150-foot gravel access road from a separate parcel was a substantial change that required a new 45-day notice. The Town also stated that, as requested by the Department, GLC should be required to analyze the visual impacts of the project on neighbors. The Town further expressed its disagreement with the Department that the project did not present any significant concerns under the § 248 criteria, insofar as it was in direct contravention of a provision of the town plan that suggested limiting electrical generation facilities to those under 300kW.
¶ 8. On September 8, GLC filed a second revised site plan and a response to comments from the Department, the Town, and the Agency of Natural Resources. GLC stated that the proposed design changes were minor and would not have any significant impact with respect to the criteria set forth in § 248. As for the Department's comments, GLC stated that reports from various experts demonstrated that the changes would not significantly impact the § 248 criteria, that an attached updated aesthetics review indicated there would be little to no visibility of the project from adjoining residences, and that GMP's attached FTA demonstrated the project would not have an undue adverse impact on system stability and reliability. With respect to the Town's comments, GLC stated that none of the changes to its proposal had the potential to significantly impact any of the applicable § 248 criteria, that using the property adjoining the project parcel to the north did not require further notice because the adjoining property is completely surrounded by previously noticed properties, and that the plain language of the town plan concerning the size of solar projects is suggestive rather than mandatory and does not set absolute limitations. GLC asserted that a hearing was not necessary for the Board to reach a final determination in this matter.
*1215 ¶ 9. On September 14, the Town filed a letter stating that GLC had not provided notice regarding the revised site plan to a newly affected adjoining landowner. In response to the Board's request, GLC filed letters stating that it had provided a copy of the application to the newly affected adjoining landowner, and that the adjoining landowner had waived the right to comment in the proceeding.
¶ 10. On September 17, the Town filed extensive supplemental comments on the application. Among other things, the Town asserted that the proposed project failed to satisfy several of the § 248 criteria, including those concerning orderly development of the region, aesthetics, historic sites, system stability and reliability, public safety, wetlands, endangered species, and traffic during the construction phase of the project. The Town made several recommendations to the Board, including that it require the project to be limited to 300kW.
¶ 11. On November 3, the Town filed a letter stating that the proposed project had failed Criterion 3 of GMP's FTA and requesting that GMP be joined as a party to the proceeding. On December 22, GLC filed an addendum to the FTA from GMP explaining why Criterion 3 was no longer relevant to the project interconnection analysis. On January 4, 2016, GMP filed a letter stating that, based on its analysis provided in the FTA addendum, the project did not raise any significant issue with respect to system stability and reliability. On that same day, the Department filed a letter stating that, based on its review of the FTA addendum, the project could be safely interconnected with the system without any further formal studies.
¶ 12. On February 10, 2016, in response to the Board's January 25 directive, GLC filed a response to the Town's September 17 comments. GLC cited the letters, affidavits, and exhibits it had previously filed, as well as the various actions it had taken, to address the Town's concerns. GLC stated that its filings and actions, collectively, provided sufficient evidence for the Board to determine, without holding a hearing, that the proposed project would not have an undue adverse impact on the applicable substantive § 248 criteria and would promote the general good of the state.
¶ 13. On March 4, 2016, the Board filed its final order granting GLC a CPG for its proposed project. In relating the procedural history of the case, the Board stated that it would not consider the Town's September 17 supplemental comments because they were not timely filed. In its decision, the Board addressed the applicable § 248 criteria and determined that the project satisfied each of those criteria. The Town appeals that decision to this Court.
¶ 14. "This Court applies a deferential standard of review in appeals from the Public Service Board." In re Rutland Renewable Energy, LLC, 2016 VT 50, ¶ 8, 202 Vt. 59, 147 A.3d 621 (quotation omitted). As we stated in In re UPC Vt. Wind, LLC:
When the Board evaluates a petition for a CPG under 30 V.S.A. § 248, it is engaging in a legislative, policy-making process. The Board must exercise its discretion to weigh alternatives presented to it, utilizing its particular expertise and informed judgment. We give great deference to the Board's expertise and judgment and accord a strong presumption of validity to the Board's orders. We will affirm the Board's findings unless they are clearly erroneous, and an appellant bears a heavy burden of demonstrating clear error.
2009 VT 19, ¶ 2, 185 Vt. 296, 969 A.2d 144 (citations and quotations omitted). Notwithstanding this deferential standard of *1216 review, "we do not abdicate our responsibility to examine a disputed statute independently and ultimately determine its meaning." Rutland Renewable Energy, 2016 VT 50, ¶ 8, 147 A.3d 621 (quotation omitted).
¶ 15. The Town first argues on appeal that the Board acted arbitrarily and capriciously and outside the scope of its lawful authority by denying a hearing when the Town raised significant substantive issues pertaining to the proposed project. The Town's first assertion within this general argument is that the Board's statutory authority to "modify" hearing requirements does not empower it to effectively eliminate hearings in net-metering cases. According to the Town, Board Rule 5.100 eliminates public hearings and establishes an elusive threshold for demonstrating the need for a technical hearing. The Town appears to back off this argument in its reply brief, stating that it is not challenging the adoption process of the Board's rule, and that the crux of its argument is that the rule as applied in this case amounts to an arbitrary agency action in excess of its authority.
¶ 16. To the extent that the Town is arguing that the Board is without authority to decline to hold a hearing in particular net-metering cases, we reject that argument. In enacting Act 136, the Legislature envisioned a more streamlined process for reviewing relatively small net-metering projects. Indeed, as noted, Act 136 required the Board to "seek to simplify the application and review process as appropriate" and specifically permitted the Board to "modify notice and hearing requirements ... as it deems appropriate." 1997, No. 136 (Adj. Sess.), § 2(c)(2)-(3). The Board's unchallenged, presumably lawfully promulgated administrative rule is "prima facie evidence of the proper interpretation of the matter that [it] refer[s] to." 3 V.S.A. § 845(a). Moreover, there is no indication that the Legislative Committee on Administrative Rules has ever objected to Board Rule 5.100's modified hearing requirement, despite the significant passage of time and multiple amendments since Act 136 was enacted and the rule promulgated. See id. § 842(b) (providing that Legislative Committee on Administrative Rules may object to proposed rule on grounds that it is beyond agency's authority or contrary to legislative intent).
¶ 17. Notably, the Board may issue a CPG under § 248 for projects meeting certain conditions, without the normal notice and hearing requirements. See 30 V.S.A. § 248(j)(1). In those cases, as with net-metering projects brought under § 219a, the Legislature requires the Board to hear evidence only if "the Board finds that the petition raises a significant issue with respect to the substantive criteria of this section." Id. § 248(j)(2). Pursuant to § 248(j), the Board has approved electric generation projects more than double the size of the instant project. See, e.g., In re Vt. Elec. Coop., Inc., No. 8439 (Vt. Pub. Serv. Bd. May 22, 2015), 2015 WL 3487155, at *13 (approving 1 MW solar array without hearing under § 248(j) ); In re WE 90 Tech. Drive, LLC, No. 8111 (Vt. Pub. Serv. Bd. February 21, 2014), 2014 WL 794197, at *17 (same for 2.0 MW solar array). Although § 248(j) is not applicable in the instant case, it reflects legislative acknowledgment that hearings are not always necessary. The significant-issue requirement in Board Rule 5.100(C) further reflects this legislative acknowledgment and gives adequate assurance of the opportunity for a hearing when significant issues concerning relevant, substantive criteria are raised in a specific, nonspeculative manner.
¶ 18. The Town argues, however, that the Board's decision not to hold a *1217 hearing in this particular case was arbitrary and capricious because the Town made the requisite "showing that [GLC's] application raises a significant issue regarding one or more of the criteria" applicable to net-metering CPG petitions. Board Rule 5.110(C). A subcomponent of this argument, which we address first, is whether the Board abused its discretion or violated its own rules by not considering the Town's September 17 comments based on its determination that they were untimely filed.
¶ 19. In relevant part, the applicable version of Board Rule 5.110(C) provides as follows:
Completed Applications. Upon receiving an application under this subsection, Board staff will review the application for completeness. If the application does not substantially comply with the application requirements set forth herein, the Clerk of the Board will inform the applicant of the deficiencies. Upon submission of all information necessary to address the deficiencies, the Clerk of the Board shall notify the applicant that the filing is complete.
Submission of Comments and Requests for Hearing. If any person or other entity wishes to submit comments to the Board concerning an application filed pursuant to this subsection, file a motion to intervene, or request a hearing, such correspondence is due at the Board within 21 calendar days of the date that the application was submitted to the Board and all required parties. Anyone requesting a hearing must make a showing that the application raises a significant issue regarding one or more of the criteria listed in Section 5.108 of the criteria conditionally waived in that section. Such a showing must go beyond general or speculative claims, and provide specific information regarding potential impacts for the criteria.
¶ 20. Citing this provision, the Town argues that GLC's application was defective and incomplete until October 20, 2015, more than one month after the Town filed its September 17 comments. The Town reasons as follows. In its July 13 application, in response to concerns raised by the Vermont Division for Historic Preservation, GLC filed a site plan that changed its road access as originally indicated in its 45-day advance notice from an improved and lengthened existing driveway adjacent to the Russell Farm to a longer driveway on a separately owned adjoining parcel just north of the Russell Farm. In its August 6 comments, the Town asserted that the 45-day advance notice period should be reopened because the adjoining parcel owner had not been identified and the new abutter had not been notified. The Town repeated this assertion following GLC's filing of its September 8 revised site plan. On October 2, the Board directed GLC to respond to the Town's comments regarding a lack of notice to the new abutting property owner. GLC responded that the property owner in question did not object to the project. When, on October 15, the Board asked GLC to supplement its response with a letter indicating that the property owner waived the right to comment in the proceeding, GLC complied with that request on October 20. According to the Town, that is the date when GLC's application should be deemed complete, making its September 17 comments timely filed.
¶ 21. For the following reasons, we conclude that the Board erred in not considering the Town's September 17 comments. Although, as GLC points out, the Board never sent out a deficiency notice indicating that GLC's application was incomplete, neither did it send out notice that the *1218 application was complete. Moreover, no party objected to the Town's September 17 comments as untimely and, in fact, the Board directed GLC to respond to the comments, which it did, without suggesting that the comments were untimely. As indicated above, GLC submitted a revised project design on September 8, less than ten working days before the Town filed its September 17 comments. Under the Board's rules regarding general procedures, which do not conflict with any specific provisions of Rule 5.110 as GLC claims, defective or insufficient filings are not cured until the date on which the defect is removed or the filing made complete, see Board Rule 2.208, Code of Vt. Rules 30 000 001, and responses to amended filings must be made within ten days of the filings. In this case, the Board should have considered the Town's September 17 comments because the Town filed the comments within ten days of the date the application was effectively completed.
¶ 22. GLC argues, however, that any error on the Board's part is harmless because the Town has failed to demonstrate that its September 17 comments would have changed the outcome. Given the changes in GLC's site plan and the extent of the Town's September 17 comments on several criteria, the comments could have had an impact on either the Board's decision not to hold a technical hearing or on its ultimate decision regarding the CPG.
¶ 23. Among the additions in GLC's September 8 filing was an attached FTA from GMP related to system stability and reliability stating that although the project did not pass Criterion 3 of the FTA, Criterion 3 was no longer relevant. Although the Board indicated in a footnote that it was not considering the Town's September 17 comments, it did consider the FTA issue "[i]n response to the Town's concerns"-concerns that the Town addressed for the first time in its September 17 comments in response to attachments to GLC's September 8 filing. In those comments, the Town noted that the project did not pass Criterion 3 of the FTA screening process, and requested a hearing "with full discovery ... to determine factually and legally why and how GMP determined that a regulatorily-mandated interconnection standard is irrelevant and its potential impact on system reliability and public safety." The Town filed additional supplemental comments on the FTA issue on November 3.
¶ 24. In response to the Town's comments, in December 2015 GLC filed an FTA addendum in which GMP provided a technical explanation for its conclusion that the project would not cause an adverse impact on system stability and reliability, despite it having failed Criterion 3. The Department of Public Service reviewed the addendum and in early January 2016 filed a letter stating that the addendum "contain[ed] sufficient engineering detail to support GMP's conclusion that the project can be safely interconnected without further formal studies." At the same time, GMP filed a letter stating that, based on its engineering staff's assessment of the project, the project could be interconnected without adversely affecting the system despite not passing all of the FTA criteria, and that the project "does not raise a significant issue with respect to system stability and reliability."
¶ 25. In its decision, the Board summarily concluded that the project would not adversely affect system stability or reliability, noting that GMP had determined that the failure to meet Criterion 3 of the FTA was not relevant to the project's ability to interconnect with the system without adversely impacting safety and reliability, and that GMP's addendum had provided a technical explanation for that determination.
*1219 The Board also noted that the Department's engineering staff had reviewed the addendum and agreed with GMP's conclusion that the project would not adversely affect the stability or reliability of the grid and that further studies were not required to reach that conclusion. Based on these observations, the Board waived the requirement in Board Rule 5.503(A) that applications not meeting all of the FTA screening criteria must be evaluated under a more rigorous process set forth in Board Rule 5.507.
¶ 26. Given this procedural history, we remand the matter for the Board to hold a technical hearing to consider the interconnection concerns raised by the Town and the propriety of the project going forward under the FTA despite its noncompliance with Criterion 3.[4] Essentially, the Board stated that it was waiving the application of Board Rule 5.503(A) because GMP and the Department indicated that there was no interconnection problem. This was an insufficient response to the Town's comments. Cf. In re Green Mountain Power Corp., 162 Vt. 378, 382, 648 A.2d 374, 377 (1994) ("Though the Board's expertise is at the heart of the deference given to its decisions, ... that expertise is not a license to shroud its reasoning in an all-encompassing explanation that a particular decision is simply necessary to yield what the Board perceives is the correct result." (citation omitted)). Considering that the Board was being asked to waive its own substantive rule, the Town's challenge to the propriety of the FTA in this instance raised a significant issue that required the Board to hold a hearing, take evidence, and make an independent determination on that issue in response to the Town's comments.[5] Cf. In re Cont'l Tel. Co. of Vt., Inc., 150 Vt. 76, 78, 549 A.2d 639, 640-41 (1988) (ruling that Board, in making its own independent determination of expert evidence before it, properly performed its function).
¶ 27. Apart from the interconnection issue, we remand the matter for the Board to consider the Town's September 17 comments in toto and determine if they raise any significant issues requiring a technical *1220 hearing. The Board must consider not only previously unaddressed changes in GLC's September 8 filing, such as the second access road, but also the Town's supplemental comments on other criteria.[6]
¶ 28. As for the Town's argument that the Board was compelled to hold a technical hearing even discounting its September 17 supplemental comments, we cannot agree. On this point, the Town summarily argues, without explaining why, that, considered together, its three filings of comments prior to September 17-the 45-day advance notice comments, the initial comments, and the comments filed shortly thereafter in response the Department's comments[7] -demonstrated the existence of significant issues on substantive § 248 criteria warranting a technical hearing.
¶ 29. In its 45-day advance notice comments, the Town asserted that: (1) the proposed project interfered with the orderly development of the region and in particular land conservation measures contained in the town plan; (2) the project did not constitute a net-metering system as defined under Board rules and thus should not be considered under net-metering procedures; (3) the proposed project creates a negative economic impact and negative social benefits for the Town; (4) the project would have negative effects on soil and water and requires a storm water permit; (5) the project requires local subdivision and zoning permits and is subject to municipal land use review; and (6) when the project is decommissioned, town residents will be stuck with an eyesore.
¶ 30. On August 6, after GLC filed its July 13 application, the Town filed brief comments in which it stated that it was reiterating its 45-day advance notice comments "with the following minor alterations and additions": (1) it appeared that notice to adjoining landowners was adequate; (2) GLC should submit an analysis of the visual, noise, and traffic effects of the project, if any, on nearby residences; and (3) GLC's application indicated changes to the proposed project from the 45-day advance notice, including relocating the road access to the solar array.
¶ 31. In its August 10 filing, the Town argued that: (1) the involvement of a second parcel of land for the relocated access constituted a substantial change that required a new 45-day advance notice and a technical hearing; (2) GLC's failure to include two letters from the Vermont Division of Historic Preservation required a new 45-day advance notice; (3) GLC's application failed to analyze visual, noise, and traffic impacts of the construction phase of the project on nearby residences; and (4) the proposed project is inconsistent with *1221 the town plan's limitation on the size of solar projects and thus in contravention of the orderly development of the region.
¶ 32. As noted, on appeal the Town provides little explanation for its position that a technical hearing was required, generally stating that it raised multiple issues concerning the orderly development of the region, to which it asserts the Board failed to give due consideration, and that, in and of itself, the town plan's limit on the size of solar projects warranted a technical hearing.
¶ 33. We conclude that the Town has failed to demonstrate that the Board abused its discretion by not holding a technical hearing based on the three filings described above, which, for the most part, contained generalized assertions for denying a CPG for the proposed project. With regard to giving due consideration to the orderly development of the region, the Board considered the power generation guidelines in the town plan "suggest[ing]" that any project have a total energy generation capacity of less than 300kW, meet the needs of Vermont electric customers, and not have an undue adverse impact on the rural and scenic nature of the town. Noting that the guidelines were suggestive rather than mandatory under the plain language of the town plan, the Board concluded that, in any event, the proposed project met the needs of Vermont electric customers and was minimally visible from public roadways and other public infrastructures or nearby residences. The Board further concluded that even if the project violated a mandatory provision of the town plan limiting the size of power generation facilities, which it did not, the Town had failed to show how such a violation would interfere with the orderly development of the region. The Board also found the project to be consistent with the town plan's strong encouragement of renewable energy generation and that no land conservation measures in the town plan prohibited the project. The Board further concluded that the project would have only a temporary and minimal adverse effect with respect to traffic impacts. The Board's findings and conclusions on these points are supported by GLC's submission of a variety of expert reports, affidavits, exhibits, and comments. For its part, the Town has failed to indicate how a technical hearing would allow it to make its case against the project, beyond its own submissions.
¶ 34. Finally, the Town argues that certain findings of the Board are clearly erroneous. The Town first challenges the Board's finding that the project will provide electricity for Phoenix Feeds and Nutrition, Inc.'s facilities in New Haven. The Town asserts that this finding is erroneous, given GLC's January 2016 letter notifying the Board that Phoenix would no longer be one of the entities taking power from the project because of delays in GLC obtaining a CPG. According to the Town, this erroneous finding is critical because GLC is required to identify the meters to be served by a group net-metering facility, which must reflect customers of the interconnecting utility, and because the identification of customers relates to a provision of the town plan stating that energy "projects should create a net benefit for the town." Although the challenged finding is apparently erroneous, we note that, in the same letter, GLC notified the Board of a substitute customer, albeit one not located in the town. On remand, the Board can evaluate the significance of this erroneous finding.
¶ 35. Next, the Town challenges the Board's finding that the project will occupy five acres at the Russell Farm address, noting that the relocated access will result in a longer road on a separate parcel.
*1222 Again, on remand the Board may consider any claim by the Town that the revised application will result in the project exceeding five acres.
¶ 36. The Town also challenges the Board's finding that the Division of Historic Preservation had reviewed GLC's application and determined that it would have no impact on historic sites. According to the Town, this finding ignores the fact that the September 8 revised site plan added a second short access road near the Russell Farm. As noted above, however, the Division filed a letter with the Board on September 8, 2015 indicating that the short access road from Route 7 to an underground pull box would have no adverse effect on historic sites. This second access road does not appear to be at the same location as the access road to the solar array indicated in the original application, to which the Division apparently objected. In any event, the matter is being remanded for the Board to consider the Town's concerns regarding this second access road.
¶ 37. The Town also challenges the Board's finding that there were no rare or endangered species within the area of the project's improvements. The Town argues that this finding ignores a report of a rare or endangered species seen in or near the Russell Farm garage, near the second access road. Again, on remand the Board will be considering the Town's concerns regarding that access road.
¶ 38. Lastly, the Town argues that the Board did not address its argument in its 45-day advance notice comments that GLC's proposed project, for various reasons, should not be considered a net-metering system as defined under Board rules. Although the Town did not emphasize this argument in its comments following GLC's application, the Board should consider the argument on remand.
¶ 39. In sum, the matter is remanded for the Board to hold a technical hearing, as the Town requested below, on whether the FTA screening process is appropriate despite the failure of the project to meet Criterion 3 of that process. On remand, the Board shall also consider issues left unaddressed in its previous order as well as the Town's September 17 comments in toto in determining whether to hold a technical hearing on those and other issues raised by the Town and whether to grant the CPG.
Reversed and remanded for further consideration as set forth herein.

Act 136, which became effective on April 21, 1998, added 30 V.S.A. § 219a. In 2014, § 219a was repealed, effective January 1, 2017.2013, No. 99 (Adj. Sess.), § 2. The repeal of § 219a did not "affect the validity or terms of a certificate of public good issued for a net metering system prior to that date." Id. § 10(c). Accordingly, "30 V.S.A. § 219a and rules adopted under that section ... govern applications for net metering systems filed prior to January 1, 2017." Id. § 10(f). Self-generation and net-metering is now covered under 30 V.S.A. § 8010.

The Board disagreed with the Town's position that it was a statutory party to the case, but concluded that the Town had a right under 30 V.S.A. § 248(a)(4)(F)(i) to "appear as a party" and therefore had grounds to intervene as of right. The Board treated the Town's notice as a request for party status and granted the request. The Town states in its brief that it "contests" the Board's interpretation "but admits that in this proceeding, it was not prejudiced thereby."

Board Rule 5.500 governs procedures for interconnection to the grid for proposed electric generation resources, including net-metering applications. Board Rule 5.501, 8 Code of Vt. Rules 30 000 055 -1, available at http://www.lexisnexis.com/hottopics/codeofvtrules. Applications that satisfy all of the fast-track screening criteria set forth in Board Rule 5.505(B) follow a fast-track process specified in Board Rule 5.506, while those applications that do not meet all of the fast-track criteria must be evaluated through appropriate studies set forth in Board Rule 5.507. See Board Rule 5.503, Code of Vt. Rules 30 000 055 -2.

On appeal, the Town argues that the Board lacked the authority to waive its own substantive rule. In response, GLC points to Board Rule 1.200, which provides as follows: "Except where prohibited by statute or the terms of the rule itself, the Board may for good cause grant exceptions in particular cases to any provision of these rules." 8 Code of Vt. Rules 30 000 001 -1 (February 2010). We do not consider the Town's argument because the Town made no such argument below. To the contrary, the Town argued in its September 17 comments that the Board could waive Board Rule 5.503(A) only on the record on the basis of evidence presented at a hearing following a full opportunity for discovery. See In re Entergy Nuclear Vt. Yankee, LLC, 2007 VT 103, ¶ 9, 182 Vt. 340, 939 A.2d 504 (stating that "when reviewing decisions of the Board, this Court will not address arguments not properly preserved for appeal"). That is the relief that our remand provides the Town.

GLC argues that the Town had no standing to challenge the FTA insofar as the Town has not been aggrieved by the Board's decision to waive a system impact study because the Town has no legal interest in systems security with respect to an electric utility's interconnection with a generation source. GLC ignores the fact that system stability and reliability is one of the CPG criteria, see 30 V.S.A. § 248(b)(3), which the Town claims can impact it in several ways. In any event, GLC did not challenge the Town's standing to comment on this issue before the Board. See Gasoline Marketers of Vt., Inc. v. Agency of Nat. Res., 169 Vt. 504, 508 n.3, 739 A.2d 1230,1233 n.3 (1999) ("Appellee ANR cannot raise standing for the first time on appeal, affording [appellant] no opportunity to present additional facts establishing standing.... The fact that standing is a threshold jurisdictional issue does not relieve a defendant of the burden of raising it at trial." (citations omitted)).

In rejecting the Town's argument that it needed to provide an additional 45-day advance notice period to the parties, the Board noted that GLC had relocated the access route north of the Russell Farm to address concerns raised by the Vermont Division for Historic Preservation and that "[t]he rest of the access road and the array itself ha[d] not been changed." Further, on September 8, the Division filed a letter with the Board stating that the addition of an improved access road extending from Route 7 approximately 250 feet to a newly added underground pull box-which appears to be the second access road the town complained of in its September 17 comments-would not adversely affect historic sites. Nevertheless, we cannot conclude from the record that the Board adequately addressed the Town's September 17 comments on the second access road, which GLC first presented in its amended site plan attached to its September 8 filing.

The Town refers to these latter comments as its "August 6" comments, but the Board found that these comments were filed on August 10, which is consistent with the Board's docket entries. In any event, the Board considered the comments in its decision.