NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 109

No. 2017-343

In re Petition of LK Holdings, LLC

Supreme Court

On Appeal from
Public Utility Commission

April Term, 2018

James Volz, Chair

Gerald R. Tarrant and Ryan P. Kane of Tarrant, Gillies & Richards, Montpelier, for Appellant.

Stephanie B. Hoffman, Special Counsel, Montpelier, for Appellee Public Service Department.

Cindy Ellen Hill of Hill Attorney PLLC, Middlebury, for Intervenor/Appellee Matthew Daniels, and Adam Lougee, Middlebury, for Intervenor/Appellees Town of Whiting and Addison County Reginal Planning Commission.


PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.    **SKOGLUND, J.**    Applicant LK Holdings LLC appeals the Public Utility Commission's dismissal of its application for a certificate of public good for a proposed group net-metered photovoltaic electric power system.[1]   The Commission dismissed the petition as incomplete because applicant failed to provide notice to adjoining landowners that its application had been filed. We affirm.

---

[1]   Prior to July 1, 2017, the Public Utility Commission was known as the Public Service Board. See 2017, No. 53, § 9. For clarity, we will refer to it as the Commission throughout this opinion.

# I. Facts

¶ 2.     On June 16, 2016, applicant notified state, regional, and municipal entities as well as adjoining landowners of its intent to seek a certificate of public good (CPG) to construct and operate a 500-kilowatt solar photovoltaic group net-metered system2 in Whiting, Vermont.  On December 9, 2016, applicant filed its CPG application with the Commission.  The application certified that notice of the filing had been provided to adjoining landowners as required by Commission rule.  See Regulations Pertaining to Construction and Operation of Net Metering Systems § 5.110(C) [hereinafter Former Rule 5.100], http://puc.vermont.gov/sites/psbnew/files/doc_library/5100-PUC-nm-adopted-2013_0.pdf  [https://perma.cc/NA8X-85P8]  (requiring  that upon filing of CPG application, applicant must notify state and local authorities and "shall also provide notice to . . . the landowners of record of property adjoining the project site(s) that the application has been filed with the Commission").  However, applicant did not actually provide notice of the filing to any of the adjoining landowners at that time.

¶ 3.     In a December 16, 2016 memorandum, the Commission directed applicant to submit information concerning the project's compliance with any municipal bylaws or ordinances that contained screening requirements "to complete its application for the [Commission's] review."  The Commission stated that it would begin its review of the project upon receipt of the requested information and indicated that any comments on the application were due no later than twenty-one days after the requested information was filed.  The Commission sent its memorandum to all interested persons and entities on the service list for the docket, including the adjoining landowners.

---

[2] For an explanation of net-metering systems and the history of the net-metering program, see In re New Haven GLC Solar, LLC, 2017 VT 72, ¶¶ 2-4, __Vt.__, 175 A.3d 1211.

¶ 4.     Applicant filed the requested supplemental information on December 23, 2016. Over the next several weeks, the Division for Historic Preservation, the Agency of Natural Resources, and the Department of Public Service filed comments regarding the application, and the Addison County Regional Planning Commission and the Town of Whiting moved to intervene and requested a hearing on orderly development and aesthetics. In its letter to the Commission, the Department noted that two appendices—maps and a photographic inventory—were missing from the application, and asserted that such information was necessary for the Department to complete its review.

¶ 5.     On January 18, 2017, applicant filed a copy of its notice to adjoining landowners that its CPG application had been filed. The notice is dated January 16, 2017; however, applicant states in its brief that the notice was actually sent the following day. Applicant also filed the missing appendices on January 18.

¶ 6.     Adjoining landowner Matthew Daniels filed a motion to intervene on January 24, 2017. Three days later, Daniels, the Addison County Regional Planning Commission, and the Town of Whiting filed a joint motion to dismiss the CPG application as incomplete because applicant had failed to notify adjoining landowners and because the application was missing critical information regarding orderly development and aesthetics.[3]

---

[3] In its response to the motion to dismiss, the Department agreed that the application should be dismissed if determined to be incomplete when filed. If the application was deemed complete, the Department argued, the Commission should separately decide whether the December 9, 2016 application satisfied the requirement that applications be filed within 180 days of the advance notice to interested parties. See Former Rule 5.100 § 5.110(C) (providing that if applicant did not file "an application for the project, pursuant to the filing requirements below, within 180 days of the date of the advance notice, the notice will be considered withdrawn"). On appeal, the parties dispute whether dismissal would be appropriate under that rule. We need not address these arguments because we affirm the Commission's dismissal based on the lack of notice to landowners. For the same reason, we find it unnecessary to address intervenors' argument that the missing appendices and other alleged defects rendered the application incomplete separate from the lack of notice.

¶ 7.     After soliciting comments from applicant and other parties regarding the motions, the Commission granted the motion to dismiss on May 22, 2017.  It ruled that the notice to landowners and certification of such notice were a necessary part of a complete application, and that applicant did not satisfy these requirements until January 18, 2017.  It rejected applicant's argument that the Commission's December 16, 2016 memorandum cured the lack of notice because the rule placed the onus on the applicant to notify the landowners and the December 16 memorandum did not give notice of a complete application.  The Commission therefore dismissed the application without prejudice to refiling under the revised net-metering rule that took effect on January 1, 2017.

¶ 8.     Applicant filed a motion to reconsider the dismissal, which the Commission denied. This appeal followed.

## II. Standard of Review

¶ 9.     Like the recent case of In re Stowe Cady Hill Solar, LLC, this appeal requires us to review the Commission's interpretation of its own completeness rule, a rule that is both substantive and procedural.  2018 VT 3, ¶¶ 15-21, __Vt.__, 182 A.3d 53.  In such cases, we will "defer to an agency's interpretation of its own regulation, as long as that interpretation is consistent with the statute that authorized promulgation of the regulation in question" and is consistently applied.  Id. ¶ 20.  As discussed below, we hold that the Commission's interpretation of its rules here was consistent with statute and prior precedent, and is therefore entitled to deference.

## III. Analysis

¶ 10.    On appeal, applicant argues that the December 9, 2016 CPG application was substantially complete despite the lack of notice to landowners because it contained testimony and exhibits addressing all of the substantive CPG criteria.  Because the application was substantially complete when filed, applicant argues, applicant had a vested right to proceed under the 2016

4

version of the net-metering rule. Applicant further argues that even if the application was not complete in December, the Commission's rules should be construed to allow its January 18, 2017 curative filing to relate back to the original application filing date. Applicant also claims that dismissal was an inappropriate remedy for the notice defect. Finally, applicant maintains that the Commission erred in dismissing the application because the new net-metering program had not yet been adopted through formal rulemaking. We address each argument in turn.

A. Completeness of December 9, 2016 CPG Application

¶ 11. A developer seeking to construct a net-metered electric power system in Vermont must first obtain a CPG from the Commission. 30 V.S.A. § 231(a); id. § 248(a)(2); see New Haven GLC Solar, 2017 VT 72, ¶¶ 2-4 (explaining net-metered systems and history of net-metering program). Commission Rule 5.100, which was first promulgated in 2001, sets forth the standards and procedures applicable to CPG applications for net-metering systems. Construction and Operation of Net Metering Systems, Code of Vt. Rules 30 000 5100 [hereinafter Rule 5.100], http://www.lexisnexis.com/hottopics/codeofvtrules/.

¶ 12. In 2014, the Legislature passed Act 99, which made significant changes to the net-metering program that became effective on January 1, 2017. 2013, No. 99 (Adj. Sess.), § 2. Act 99 required the Commission to amend Rule 5.100 to conform with its provisions. Id. § 5(d) (requiring Commission to adopt rules for revised net-metering program). Relevant here is the new rule's requirement that after January 1, 2017, ground-mounted solar projects over 150 kilowatts in capacity could only be constructed on "preferred sites." Rule 5.100 §§ 5.103, 5.104; Cady Hill, 2018 VT 3, ¶ 4. Former Rule 5.100 did not contain this requirement. The Department of Public Service asserts, and applicant does not dispute, that applicant's proposed net-metering system would not qualify for a CPG under the new rule because it is not proposed to be constructed on a preferred site.

5

¶ 13. However, new Rule 5.100 also provides that "[a]ny complete CPG application filed prior to January 1, 2017, shall be reviewed pursuant to the version of Rule 5.100 that was in effect at the time the complete application was filed." Rule 5.100 § 5.125(B); see also 2013, No. 99 (Adj. Sess.), § 10(f) ("30 V.S.A. § 219a and rules adopted under that section shall govern applications for net metering systems filed prior to January 1, 2017."). In other words, an application that was filed prior to January 1, 2017 and was complete when filed "can qualify for a CPG if it meets the criteria of the old rule even if it would not qualify under the new rule." Cady Hill, 2018 VT 3, ¶ 5. The viability of applicant's proposed project accordingly depends on whether its December 2016 CPG application was complete when filed, entitling applicant to consideration under the former rule.

¶ 14. Under the pre-2017 net-metering program, two related rules guided the Commission's determination of the completeness of an application. See id. ¶ 6 (applying pre-2017 rules for determining completeness of application filed in December 2016). Former Rule 5.100 provided that upon receiving a CPG application for a net-metering system,

> Commission staff will review the application for completeness. If the application does not substantially comply with the application requirements set forth herein, the Clerk of the Commission will inform the applicant of the deficiencies. Upon submission of all information necessary to address the deficiencies, the Clerk of the Commission shall notify the applicant that the filing is complete.

Former Rule 5.100 § 5.110(C). A separate procedural rule, Rule 2.208, stated:

> Substantially defective or insufficient filings may be rejected by the Commission, provided, that if it will not unreasonably delay any proceeding nor unreasonably adversely affect the rights of any party, the Commission shall allow a reasonable opportunity to a party to cure any defect or insufficiency. A filing which is found to be defective or insufficient shall not be deemed to have been cured until the date on which the last document is filed which removes the defect or makes the filing complete. A filing is substantially insufficient if, inter alia, it fails to include all material information required by statute or rule.

6

Rules of Practice § 2.208, Code of Vt. Rules 30 000 2000 [hereinafter Rule 2.208], http://lexisnexis.com/hottopics/codeofvtrules/.[4]

¶ 15.  We recently considered the Commission's interpretation of its completeness rule in In re Stowe Cady Hill Solar, LLC, a case with similar but not identical facts to this one.  2018 VT 3. In November 2016, developer Cady Hill notified all required parties, including adjoining landowners, of its intent to seek a CPG for a 496-kilowatt net-metering system in Stowe.  On December 30, 2016, Cady Hill filed its CPG application and simultaneously provided notice of the filing to all but two of the adjoining landowners.  Cady Hill did not cure the error until January 4, 2017, when one of the missing landowners inquired about the status of the application.  The Commission subsequently dismissed the application on the ground that it was incomplete at the time of filing due to the failure to notify the two landowners.  Id. ¶ 13.

¶ 16.  We reversed, holding that the Commission's decision was inconsistent with its own previous application of the completeness rule in In re Seneca Mountain Wind, LLC (Seneca I), No. 7867, 2012 WL 3637613 (Vt. Pub. Serv. Bd. Aug. 15, 2012) and In re Seneca Mountain Wind, LLC (Seneca II), No. 7867, 2013 WL 4398965 (Vt. Pub. Serv. Bd. Aug. 9, 2013).  2018 VT 3, ¶¶ 22-23.  Because these decisions are also relevant to this appeal, we review them briefly.

¶ 17.  In Seneca I, the developer applied for a CPG in April 2012 to install four temporary meteorological towers in the towns of Brighton, Ferdinand, and Newark.  By Commission order, the developer was required to provide thirty days' advance written notice to adjoining landowners of its intent to file the application.  After the formal public comment period was over, two adjoining landowners filed letters with the Commission's hearing officer asserting that they did not receive notice regarding the application.  The issue of first impression raised by the landowners was

---

[4] Rule 2.208 is a general rule of procedure and was not amended in response to the 2014 legislative changes to the net-metering program.  The quoted language remained the same during the time period relevant to this case.

whether the developer was required to give notice only to those landowners abutting the specific tract of leased land upon which the project was to be built, or to all landowners abutting the full collection of contiguous tracts leased by the developer in connection with the project. The hearing officer concluded that it was the developer's collective leasehold interests that defined the boundaries of the project property, not the specific boundaries of the individual leased tract on which it was to be built. 2012 WL 3637613, at *5. Because the developer had not provided advance notice on that basis, the hearing officer suspended the proceedings to give the developer time to cure the defect by submitting a revised adjoiners map, providing notice to all owners of property adjoining all contiguous property leased by the developers who had not yet received proper notice, and submitting a revised list of adjoiners who received notice. Id. The hearing officer placed on the developer the burden of identifying any additional adjoining landowners entitled to notice on the basis of its ruling. Id. at *5-6.

¶ 18. The developer subsequently provided the required notice to a significant number of newly identified adjoining landowners on August 23, 2012, and the hearing officer deemed the application to be complete as of that date. Seneca II, 2013 WL 4398965, at *31. However, the developer failed to notify two other adjoining landowners who were entitled to notice under the hearing officer's interpretation of the project boundaries until November 2012. Id.

¶ 19. In Seneca II, an intervenor argued to the Commission that the application was not complete until December 2012, or thirty days after the two newly identified landowners received notice. The timing of the completeness of the developer's application was important because in September 2012, while the application was pending, the Town of Newark had revised its town plan to expressly label the type of development proposed by the developer as "inappropriate and inconsistent with the town's vision and goals." Id. at *36. The previous town plan did not contain such language. For its part, the developer claimed that the application was complete when

8

originally filed in April 2012 because it contained all required substantive information, and any notice failures did not render an otherwise complete application incomplete. Id. at *32.

¶ 20. The Commission rejected the developer's argument that the application was complete when originally filed with all of the required substantive information, noting that the application form required an applicant to submit a list of the parties notified of the application as part of the application process. It concluded that "an application is incomplete when the attendant landowner list improperly omits as many landowners as were omitted in [developer's] initial [a]pplication." Id. Adopting the developer's position that defective notice did not affect the completeness of the application would mean that "[t]he clock would start running on the proceeding even if no adjoining landowners have received notice, thus eliminating any opportunity to resolve any issues with the adjoining landowners through negotiation as opposed to litigation." Id. The Commission found that this would create unnecessary delays in the process and would frustrate the legislative purpose of expeditiously processing CPG applications for meteorological towers. Id.

¶ 21. However, the Commission agreed with the hearing officer's determination that the application was complete on August 23, 2012, "because as of that date, [the developer] had substantially complied with the application requirements." Id. at *34. Although two adjoining landowners who should have received notice in August 2012 did not, the Commission nevertheless affirmed the hearing officer's conclusion that the developer had substantially complied with the application requirements because by then the developer had provided copies of the application to seventy different entities or persons, each of whom was given an opportunity to participate in the proceeding. Id. at *35. Because the developer's application was complete before the new town plan was adopted, the Commission concluded that the previous town plan applied to the proceeding. Id. at *39.

¶ 22. We observed in Cady Hill that "[w]ith respect to the notice requirement, [Seneca II] turns on the relative proportion of those landowners who did not receive notice to the number that [the developer] had correctly given notice." 2018 VT 3, ¶ 25. Applying this principle, we concluded that Cady Hill's application was complete when filed because it substantially complied with the application requirements. Id. ¶ 27. Cady Hill had provided advance notice to all of the required adjoining landowners and the list of adjoining landowners submitted to the Commission was complete and accurate. Further, "there [was] no dispute that Cady Hill provided contemporaneous notice of its filing to the owners of eight of the nine adjoining parcels." Id. We reasoned that "[a]s in [Seneca II], on this record Cady Hill's failure to provide contemporaneous notice to two landowners who together owned a single adjoining parcel, when it otherwise fully complied with all other application requirements, does not undermine the conclusion that its application was substantially complete when filed." Id. We therefore concluded that Cady Hill's application should be considered according to the pre-2017 version of Rule 5.100. Id. ¶ 29.

¶ 23. The facts of this case are significantly different from Cady Hill and compel a different result. Here, applicant did not provide the required notice to any of the adjoining landowners when it filed its application on December 9, 2016. See Former Rule 5.100 § 5.110(C) (requiring applicant to notify adjoining landowners upon filing of application). Unlike Seneca II and Cady Hill, but like Seneca I, in this case an entire class of individuals who were entitled to notice of the filing did not receive it. This was a substantial defect in the application that applicant did not cure until January 18, 2017. The Commission's conclusion that the application was incomplete under these circumstances is consistent with its prior precedent. See Seneca II, 2013 WL 4398965, at *32 ("[A]n application is incomplete when the attendant landowner list improperly omits as many landowners as were omitted in [developer's] initial [a]pplication."); Seneca I, 2012 WL 36637613, at *3 (deeming application incomplete where developer failed to

10

provide notice to landowners adjoining entire parcel of contiguous properties leased by developer); see also In re Ludlow Driver Solar, LLC, 16-0067-NMP, 2017 WL 1373312, at *1 (Vt. Pub. Serv. Bd. Feb. 23, 2017) (dismissing net-metering application filed in December 2016 where applicant failed to provide forty-five-day advance notice or notice of filing to seven adjoining landowners).[5]

¶ 24.    In re North Springfield Sustainable Energy Project LLC, cited by applicant, does not dictate a different result. No. 7833, 2014 WL 580146 (Vt. Pub. Serv. Bd. Feb. 11, 2014). In North Springfield, an intervenor opposing an applicant's proposed wood-fired biomass electric generating facility argued that the application was not completed until after certain amendments to the substantive criteria of 30 V.S.A. § 248(b) took effect, and thus was subject to the new version of the statute. The intervenor claimed the application was incomplete when filed because it lacked a proposed power-purchase agreement, used a flawed feasibility study and economic model, did not include a forest harvesting plan or a viable plan for eliminating chemicals from the boiler, and failed to address appropriate ingress and egress from the site. Id. at *85. The Commission rejected the intervenor's argument, noting that the alleged defects were "really questions of whether [the applicant] met its burden of persuasion at the time it filed the petition, and not questions regarding the completeness of that petition." Id. at *86. Notice was not at issue and the Commission did not base its completeness determination on that factor. North Springfield is therefore not inconsistent with this case.

---

[5]    We disagree with applicant's contention that the decision below conflicts with New Haven GLC Solar, in which we stated that a developer's application was complete on the date it filed its amended site plan, even though the developer had not yet given notice of its application to one adjoining property owner identified in that site plan. 2017 VT 72, ¶ 21. In New Haven GLC Solar, like Cady Hill and Seneca II, almost all of the adjoining landowners had already received the proper notice required by rule. Id. ¶ 7. The facts of this case are significantly different. Moreover, we did not resolve New Haven GLC Solar on the basis of notice, instead reasoning that the Commission should have accepted the Town of New Haven's comments because they were filed within the proper time for responding to the developer's amended site plan. Id. ¶ 21. Thus, New Haven GLC Solar is of limited precedential value in this case.

11

¶ 25. We reject applicant's argument that under Former Rule 5.100, a failure to provide required notice to adjoining landowners could not render an application incomplete if the application included sufficient information to address all of the rule's substantive criteria. The rule stated in relevant part that upon receipt of an application, Commission staff would review the application for deficiencies and notify the applicant "[i]f the application does not substantially comply with the application requirements set forth herein." Former Rule 5.100 § 5.110(C). Notice to landowners was one of the application requirements. Moreover, this language must be read in conjunction with Rule 2.208, which states that "[a] filing is substantially insufficient if, inter alia, it fails to include all material information required by statute or rule." Rule 2.208 (emphasis added). The inclusion of the phrase "inter alia," which means "among other things," meant that a determination of incompleteness could be based on other defects in an application besides a failure to include testimony or exhibits. Black's Law Dictionary 932 (10th ed. 2014). Adopting applicant's interpretation would mean that a CPG proceeding could proceed indefinitely without any adjoining landowners receiving notice, preventing them from seeking to intervene or comment in a timely manner and likely delaying the process. The Commission rejected a similar argument in Seneca II, finding that it would be contrary to the legislative intent of expediting § 246 proceedings. 2013 WL 4398965, at *32. Similarly, adopting applicant's position here would conflict with Commission precedent and the legislative intent of simplifying the process for net-metering applications. See New Haven GLC Solar, 2017 VT 72, ¶ 16 (noting that net-metering statute reflects legislative intent to create "a more streamlined process for reviewing relatively small net-metering projects" such as applicant's 500-kilowatt solar project).

¶ 26. Applicant also argues that the Commission's determination that the application was incomplete due to the notice defect conflicts with its December 16, 2016 memorandum, which indicated that applicant only needed to file evidence of compliance with municipal screening

12

standards for the application to be considered complete. However, the original application incorrectly certified that the adjoining landowners had received notice. The deficiency in notice likely was not obvious to the Commission at the time it initially reviewed the application. The Commission's later determination that the application was incomplete was not unreasonable under these circumstances.

¶ 27. Applicant notes that in zoning cases, inadequate notice does not necessarily invalidate an application. See 24 V.S.A. § 4464(a)(5) ("No defect in the form or substance of any [notice requirements] shall invalidate the action of the appropriate municipal panel where reasonable efforts are made to provide adequate posting and notice."). We decline applicant's invitation to apply this standard here. This is a CPG proceeding, not a zoning case, and 24 V.S.A. § 4464 does not control. The implications of a notice defect were adequately addressed by the Commission rule, which set forth the notice requirements for an application and provided that an application could be deemed incomplete if the requirements were not followed. Former Rule 5.100 § 5.110(C). Moreover, even if § 4464 were applicable in this type of proceeding, it would be of no help to applicant in this case because a total failure to timely provide notice does not constitute "reasonable efforts." See In re Mahar Conditional Use Permit, 2018 VT 20, ¶ 31, __Vt.__, 183 A.3d 1136 ("Where, as here, no notice is given, § 4464(a)(5) is inapplicable.").

¶ 28. Our conclusion that the Commission was correct in deeming applicant's December 9, 2016 application to be incomplete disposes of applicant's related argument that it had a vested right to proceed under the pre-2017 version of Rule 5.100. In the context of zoning cases, we have held that an applicant's rights vest "under the then existing regulations as of the time when proper application is filed." Smith v. Winhall Planning Commission, 140 Vt. 178, 181-83, 436 A.2d 760, 761-62 (1981) (emphasis added). Assuming this doctrine applies in proceedings before the Commission, applicant failed to establish a vested right in Former Rule 5.100 by filing a proper

13

and complete application before January 1, 2017. See In re Ross, 151 Vt. 54, 58, 557 A.2d 490, 492 (1989) (affirming environmental court's determination that developer's permit application under Act 250 was incomplete for purposes of establishing vested rights in then-existing law because it sought review under only two of ten Act 250 criteria); cf. In re Jolley Associates, 2006 VT 132, ¶ 16, 181 Vt. 190, 915 A.2d 282 (holding that developer's filing of completed zoning application prior to change in applicable regulations gave developer vested right in laws in effect at time of filing).

## B. Whether Dismissal Was Appropriate

¶ 29. Applicant contends that even if its application was incomplete due to the lack of notice to adjoining landowners, dismissal was an overly harsh remedy. Instead, it claims, the Commission should have paused the proceedings and given the adjoining landowners additional time to participate, as it has elsewhere.

¶ 30. We conclude that the Commission acted within its discretion to dismiss the application under the facts of this case. As described above, applicant's proposed project was ineligible for a CPG under new Rule 5.100. Applicant failed to file a complete application prior to the rule change, and therefore had no right to proceed under the former rule. Dismissal was appropriate under the circumstances and was consistent with the Commission's approach in similar cases. See In re Southshire Cmty. Solar, LLC, NMP-6862, 2017 WL 1862360, at *1 (Vt. Pub. Serv. Bd. Apr. 28, 2017) (dismissing CPG application for net-metering project filed on December 30, 2016 as incomplete because it failed to include elevation drawings required by rule); In re Norwich Techs., Inc., 16-0114-NM, 2017 WL 1365080, at *1 (Vt. Pub. Serv. Bd. Mar. 10, 2017) (dismissing CPG application for net-metering project filed in 2016 for failure to include site plan, and rejecting cure filed after January 1, 2017); Ludlow Driver Solar, 2017 WL 1373312, at *1

14

(dismissing net-metering application filed in December 2016 where applicant failed to provide forty-five-day advance notice or notice of filing to seven adjoining landowners).

¶ 31. The Commission's decision in In re Swanton Wind, LLC does not contradict its conclusion here. No. 8816, 2017 WL 1364802 (Vt. Pub. Serv. Bd. Mar. 2, 2017). In Swanton Wind, the Commission declined to dismiss a developer's CPG petition for a twenty-megawatt wind project for failure to provide notice to two adjoining landowners. Id. at *3. The Commission reasoned that the developer had promptly cured the lack of notice and the affected landowners had ample time to decide whether to intervene. Id. Although the facts of Swanton Wind are superficially similar to applicant's situation, there is an essential difference: there is no indication in Swanton Wind that a relevant intervening regulatory change had taken place such that the timing of the application was at issue or that the Commission's exercise of its discretion to allow a cure created a vested right in a prior regulatory scheme. Swanton Wind is therefore not inconsistent with this case, in which the timing of the application was crucial to its viability.[6]

C. Whether January 18, 2017 Notice Related Back to Filing Date of Application

¶ 32. Applicant further argues that even if the notice defect rendered its application incomplete, the Commission should have treated its January 18, 2017 curative notice as relating back to the original filing. This argument ignores the plain language of Commission Rule 2.208, which provides that "[a] filing which is found to be defective or insufficient shall not be deemed

---

[6] The other decisions cited by applicant are likewise inapposite, as neither involved an intervening regulatory change. In re ER Thurston Farm Solar E., LLC, 16-0046-NMP, 2016 WL 6601070, at *1 (Vt. Pub. Serv. Bd. Oct. 31, 2016) (waiving 180-day filing requirement where no party objected to delay and Department of Public Service advocated for site visit and additional comment period instead of reissuing notice); In re Novus Montpelier Solar, LLC, 16-0021-NMP, 2016 WL 3077783, at *8 (Vt. Pub. Serv. Bd. May 26, 2016) (granting waiver of requirement that application be filed within 180 days of advance notice where Commission temporarily suspended consideration of net-metering projects after advance notice filed, because all adjoining landowners and other required entities had received notice and opportunity to comment).

to have been cured until the date on which the last document is filed which removes the defect or makes the filing complete." Pursuant to this language, the Commission properly ruled that the application was not complete until applicant finally provided notice to the adjoining landowners on or about January 18, 2017.[7]

¶ 33. Applicant argues that if curative filings are not deemed to relate back to the original filing, the opportunity to cure offered by Rule 2.208 is completely illusory. We disagree. In most cases, the timing of a curative filing, and whether it relates back to the original filing, is irrelevant to the viability of the application because no intervening regulatory change has taken place. Allowing a cure in such cases is helpful to all parties because it obviates the need to relitigate the entire application process from the beginning. It is only in rare cases such as this one, where the curative filing must occur within a particular period to have effect, that the lack of a relation-back provision may prejudice applicants. Rule 2.208's failure to provide relief in every case does not render it meaningless.

¶ 34. In the alternative, applicant argues that the Commission abused its discretion by declining to waive Rule 2.208 as it did in In re Randolph Road Solar, LLC, No. 16-0091-NM, 2017 WL 4221956 (Vt. Pub. Serv. Bd. May 4, 2017). In that case, the Commission issued an order on December 7, 2016, notifying the developer that its September 2016 net-metering CPG application was incomplete and giving the developer thirty days to cure the defect. The developer filed the missing materials on January 7, 2017. The Commission concluded that the application should be processed under Former Rule 5.100, reasoning that "the normal application of Rule 2.208 in this case would result in the unintended consequence of depriving the [a]pplicant of the

---

[7] For this reason, we reject applicant's argument that the notice defect was cured by the Commission's December 16, 2016 memorandum, which the Commission sent to all parties, including adjoining landowners. Rule 2.208 makes clear that the defect was not cured until applicant provided notice of the filing to the landowners on January 18, 2017.

16

opportunity to cure its application within the time period that was expressly provided to the [a]pplicant." Id. at *2. It held that "[u]nder these unusual circumstances, where the [a]pplicant acted reasonably in response to a [Commission] procedural order," it would waive Rule 2.208 and allow the curative filing to relate back to December 2017. Id. Randolph Road is the unique exception that proves the rule: curative filings do not relate back to the date of filing under Rule 2.208. The Commission waived the rule in that case because it had previously given the developer thirty days to cure the defect, and the developer had reasonably relied on its instructions. Here, by contrast, there was no order regarding the notice defect—likely because the defect was not apparent to the Commission until after January 1, 2017—and applicant cannot claim that it acted in reasonable reliance on any representations by the Commission regarding the timeliness of a cure. We therefore find no error in the Commission's application of the rule as written.

### D. Validity of Dismissal Under Revised Net-Metering Program

¶ 35.    Finally, applicant argues that the Commission erred in dismissing its application pursuant to a new regulatory framework that had not been adopted by rule. As noted above, Act 99 of 2014 directed the Commission to revise its net-metering rule. The Act provided that the Commission would finally adopt rules for the net-metering program by July 1, 2016. 2013, No. 99 (Adj. Sess.), § 5(d)(5). However, it went on to state:

> If the Board is unable to finally adopt the rules by July 1, 2016, the Board may issue an order by that date establishing a revised net metering program to take effect on January 1, 2017, if that order is followed by final adoption of rules for this program within a reasonable period.

Id. § 5(d)(5)(A).

¶ 36.    As it happened, the Commission was not ready to adopt a final rule by the July 1, 2016, deadline, and accordingly issued an order on June 29, 2016, establishing the revised net-metering program. After soliciting public comments on that order, the Commission issued an

17

amended order on August 29, 2016, setting forth the proposed new Rule 5.100. This was the order in effect during the period relevant to this case. The Commission subsequently began the formal rulemaking process on October 15, 2016, by filing the proposed rule with the Secretary of State. Rule 5.100 was finally adopted and became effective July 1, 2017.[8] For purposes of this appeal, there are no significant differences between the August 29, 2016 order and the final version of Rule 5.100. See Pub. Serv. Bd., Annotated Adopted Rule 5.100 (2016), http://puc.vermont.gov/document/annotated-adopted-rule-5100 [https://perma.cc/B9GK-3234] (comparing August 29, 2016 order to final Rule 5.100).

¶ 37. Applicant argues that the new net-metering program had to be established through formal rulemaking and the Commission's August 29, 2016 order was therefore ineffective. It points to the Vermont Administrative Procedure Act (VAPA), which requires an agency to initiate formal rulemaking "[w]here due process or a statute directs an agency to adopt rules." 3 V.S.A. § 831(a). A rule is an "agency statement of general applicability which implements, interprets, or prescribes law or policy and which has been adopted in the manner provided by [the VAPA]." Id. § 801(b)(9). According to applicant, both Act 99 and due process required the Commission to

---

[8] Applicant claims that "a reasonable period" means six months and suggests that the Commission's 2016 order establishing a revised net-metering program was invalid because new Rule 5.100 was not finally adopted until nearly a year later. We disagree. If the Legislature had intended to impose a specific timeline for final adoption of the rule following an order, it could have done so explicitly. We presume that the Legislature acted advisedly in using more flexible language. Further, interpreting Act 99 to impose such a limitation would render superfluous the provision allowing the Commission to proceed temporarily by order. "Generally, we do not construe a statute in a way that renders a significant part of it pure surplusage." In re Lunde, 166 Vt. 167, 171, 688 A.2d 1312, 1315 (1997) (quotation omitted). The Commission completed formal rulemaking by July 1, 2017, which was not an unreasonable amount of time given the major changes to the net-metering program and the number of public comments received by the Commission. See In re Revised Net-Metering Rule Pursuant to Act 99 of 2014, 2016 WL 3655534, at *1 (Vt. Pub. Serv. Bd. June 30, 2016) (noting that Commission received and reviewed 532 written comments from public in response to proposed rule).

18

change the net-metering rule through the formal rulemaking process, and it could not do so through an order.

¶ 38. Applicant is correct that Act 99 required the Commission to adopt a new net-metering rule. 2013, No. 99 (Adj. Sess.), § 5(d)(5); see also 30 V.S.A. § 8010(c). However, it also expressly authorized the Commission to proceed by order if the rulemaking process was not completed by July 1, 2016. 2013, No. 99 (Adj. Sess.), § 5(d)(5)(A). We disagree with applicant's contention that the Legislature does not have the power to modify the requirements of the VAPA in order to allow an orderly and expeditious transition to a new regulatory scheme, as it did here. "It is the Legislature's prerogative to establish the procedures governing the establishment of agency policy of general applicability, just as it was the Legislature's prerogative to give [the Commission] discretion over [the net-metering program] in the first instance." Parker v. Gorczyk, 173 Vt. 477, 480, 787 A.2d 494, 499 (2001). To the extent that there is a conflict between Act 99 and the VAPA, the more specific statute, that is, Act 99, controls. Town of Brattleboro v. Garfield, 2006 VT 56, ¶ 10, 180 Vt. 90, 904 A.2d 1157 ("We apply the long-standing rule of statutory construction that where two statutes deal with the same subject matter, and one is general and the other specific, the more specific statute controls.").

¶ 39. We disagree with applicant's contention that due process required formal rulemaking. Although we have held that the VAPA, when it applies, provides sufficient process to protect citizens' rights, we have never held that the specific procedures set forth by the VAPA are the only way to satisfy due process. See In re Diel, 158 Vt. 549, 554, 614 A.2d 1223, 1226 (1992) (declining to delineate exact procedures due process required when agency decided to rescind policy change without notice because agency "action fell within the definition of rulemaking under the APA, which provides procedures that adequately protect petitioners' rights"). Applicant and other similarly situated persons and entities were provided with ample

19

process here. The Commission held a series of eight public workshops, solicited multiple rounds of public comments seeking input on the revised net-metering program, conducted two public hearings, and revised the proposed rule several times in response to feedback it received. Revised Net-Metering Rule, 2016 WL 3655534, at *1. In other words, the Commission provided notice of the change and multiple opportunities for affected persons such as applicant to be heard, thereby meeting the requirements of due process. Diel, 158 Vt. at 553, 614 A.2d at 1226 (noting that provision of notice and opportunity to file statements of position, submissions of evidence and other relevant observations during rulemaking process typically sufficient to satisfy due process (citing United States v. Florida E. Coast Ry. Co., 410 U.S. 241-46 (1973))). We therefore see no reason to disturb the decision below.

Affirmed.

FOR THE COURT:

_____
Associate Justice